**In re PRIMEDIA INC. DERIVATIVE LITIGATION.**

**C.A. No. 1808–N.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Sept. 25, 2006.
Decided: Nov. 15, 2006.

Jessica Zeldin, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; James S. Notis, Gardy & Notis, L.L.P., Englewood Cliffs, NJ; Judith L. Spanier, Abbey Spanier Rodd Abrams & Paradis, L.L.P., New York City, for the Plaintiffs.

Anne C. Foster, John D. Hendershot, Grainne O. Murphy, Richards Layton & Finger, P.A., Wilmington, DE; Peter E. Kazanoff, William G. Ferullo, Simpson Thacher & Bartlett, L.L.P., New York City, for Defendants Primedia Inc., Beverly C. Chell, Dean B. Nelson, Timothy D. Dattels, Meyer Feldberg, H. John Greeniaus, David Bell, and Kelly P. Conlin.

A. Gilchrist Sparks III, Jonathan G. Strauss, Morris Nichols Arsht & Tunnell, L.L.P., Wilmington, DE, for Defendants Henry R. Kravis, Perry Golkin, Thomas Uger, Joseph Y. Bae, and Kohlberg Kravis Roberts & Co., L.P.

## OPINION

LAMB, Vice Chancellor.

In this stockholder derivative suit, the plaintiffs challenge the propriety of a series of preferred stock redemptions undertaken by the defendant corporation at the behest of an allegedly controlling stockholder. These transactions allegedly constituted breaches of the fiduciary duty of loyalty owed by the controlling stockholder and each member of the board of directors.

According to the complaint, the controlling stockholder, through an investment vehicle that it managed and held an equity interest in, purchased large amounts of the corporation's outstanding preferred stock at substantial discounts to par value. The plaintiffs claim that the controlling stockholder then proceeded, by exerting its influence and dominion over the corporation's non-independent board of directors, to cause the corporation to call the preferred stock at its full redemption price years before the corporation was contractually obligated to do so. This series of transactions resulted in a large profit for the controlling stockholder that was not shared by the corporation's other common stockholders. Because the corporation was not yet contractually required to redeem the stock and because the terms of the redemptions were unduly preferential to the controlling stockholder, the complaint alleges that the corporation suffered a resulting injury from the defendants' disloyal behavior.

Viewing the facts alleged in the complaint in a light most favorable to the plaintiffs, the court must deny the controlling stockholder's and the defendant directors' motions to dismiss for failure to state a claim upon which relief can be granted. On the present record, the court can reasonably infer that the controlling stockholder, facilitated by the acquiescence of the director defendants, engaged in a course of self-dealing such that it breached its duty of loyalty to the corporate enterprise. Therefore, the complaint withstands the defendants' challenge pursuant to Rule 12(b)(6).

**I.**

A. *The Parties*

The nominal defendant in this action is Primedia, Inc., a Delaware corporation

whose main executive offices are located in New York City. Primedia's business involves ownership of media properties and brands that "connect buyers and sellers through print publications, websites, events, newsletters, and video programs."[1] Its common stock actively trades on the New York Stock Exchange.

Defendant Kohlberg Kravis Roberts & Co. L.P. ("KKR") is an investment partnership that specializes in management buyouts of business entities. The remaining individual defendants are eleven current and former directors of Primedia, several of whom are officers of the company. The backgrounds and identities of these defendants are discussed below.

The plaintiffs are two owners of Primedia common stock, Alan Spiegal and Linda Parnes Kahn.

## B. The Facts[2]

### 1. Primedia's Ownership Structure

According to the complaint, KKR controls Primedia through a complex structure of intermediate entities. An amalgamation of investment partnerships owns approximately 60% of Primedia's outstanding common stock. Six limited partnerships[3] collectively own 40.34% of Prime-

dia's common stock. KKR Associates, L.P. is the general partner of each of these investment entities and possesses sole voting and investment power over them. KKR 1996 Fund L.P. is the record owner of 20.91% of Primedia's common stock. KKR Associates 1996, L.P. is the sole general partner of KKR 1996 Fund. KKR 1996 GP, LLC is the sole general partner of KKR Associates 1996 and thus possesses sole voting and investment power over KKR 1996 Fund.

When the dust settles, this web of entities allegedly gives KKR Associates and KKR 1996 GP voting and investment power over 61.25% of Primedia's common stock. Importantly, every general partner of KKR Associates and every member of KKR 1996 GP is a member of the limited liability company that serves as the general partner of KKR. Because of this managerial overlap, KKR allegedly controls KKR Associates and KKR 1996 GP and dictates Primedia's most fundamental business decisions. Indeed, Primedia's SEC filings state that *"Kohlberg Kravis Roberts & Co. L.P., or KKR, has control of our common stock and has the power to elect all the members of our board of directors and to approve any action requiring stockholder approval."*[4]

---

1. Compl. ¶ 3.

2. The facts discussed in this opinion are drawn from the well pleaded allegations in the first amended and consolidated derivative complaint.

3. Those entities are MA Associates, L.P., FP Associates, L.P., Magazine Associates, L.P., Publishing Associates, L.P., Channel One Associates, L.P., and KKR Partners II, L.P.

4. Compl. ¶ 34 (emphasis in original). The company's 2005 annual report continues:
 As of December 31, 2005, approximately 60% of the shares of our common stock were held by investment partnerships, of which KKR Associates, L.P., a New York limited partnership ("KKR Associates"),

and KKR GP 1996 LLC, a Delaware limited liability company ("KKR 1996 GP"), each an affiliate of KKR, are the general partners. KKR Associates and KKR GP 1996 have sole voting and investment power with respect to these shares. Consequently, KKR Associates and KKR GP 1996 and their respective general partners and members, three of whom are also our directors, control us and have the power to elect all of our directors and approve any action requiring stockholder approval, including adopting amendments to our certificate of incorporation and approving mergers or sales of all or substantially all of our assets. KKR Associates and KKR GP 1996 will also be able to prevent or cause a change of control at any time.

### 2. *Primedia's Board of Directors*

The individual defendants are various current and former directors of Primedia. Each defendant is discussed below.

Defendant Henry R. Kravis became a Primedia director in 1991 and resigned in 2006 shortly after the plaintiffs filed the complaint in this action. Kravis is a founding partner of KKR, a member of the general partner of KKR, a general partner of KKR Associates, and a member of KKR 1996 GP.

Defendant Perry Golkin became a director in 1991 and currently serves on Primedia's board. Golkin is a member of the general partner of KKR, as well as a general partner of KKR Associates and a member of KKR 1996 GP.

Defendant Dean Nelson became a Primedia director and chairman of the board in April 2003 and currently maintains both positions. On October 24, 2005, Nelson became Primedia's president and chief executive officer. Nelson is also the founder and chief executive officer of Capstone Consulting LLC, an entity which works exclusively with companies controlled by KKR. Primedia retained Capstone in 2001 and paid consulting service fees to Capstone every year between 2001 and 2005.

Defendant Beverly C. Chell is a founder of Primedia's corporate predecessor and has served as a director of the company since March 1992. Chell was general counsel of Primedia until November 9, 2005, when she became the company's chief financial officer.

Defendant H. John Greeniaus is a current director of Primedia, a position held since 1998. Greeniaus was the chairman and chief executive officer of Nabisco Foods Group and Nabisco, Inc. between 1987 and 1997. He is widely known for aiding KKR in its ultimately successful hostile takeover bid for RJR Nabisco in 1989. Greeniaus also has served as a director of the Interpublic Group of Companies, Inc. since December 2001.[5]

Defendant Meyer Feldberg is a current director and has served on Primedia's board since 1997. In March 2005, Feldberg joined Morgan Stanley as a senior advisor. KKR has hired Morgan Stanley on numerous occasions to act as lead underwriter and/or manager for sales of equity interests in KKR investments. Additionally, Feldberg was dean of Columbia Business School from 1989 to June 2004. In 2004, Kravis chaired a dinner in Feldberg's honor. Kravis also spearheaded a fund raising campaign which raised $10 million to establish the Meyer Feldberg Distinguished Fellowship Program at Columbia Business School.

Defendant David Bell began his tenure as a director of Primedia in 2001 and is a current board member. Bell is a director of the Interpublic Group and served as Interpublic's chief executive officer from February 2003 to January 2005. He is also one of the directors of the NYC Partnership, an organization that operates a charitable fund founded by Kravis.

Defendant Timothy Dattels became a Primedia director in September 2003 and resigned on March 2, 2006, shortly after the filing of the complaint in this action.

---

The complaint alleges that similar disclosures were made in Primedia's 2003 and 2004 annual reports.

5. According to the complaint, Primedia and Interpublic have long standing business relationships. For example, the two companies negotiate advertising rates whereby Interpublic buys advertising space in Primedia publications on behalf of Interpublic's clients. Primedia and Interpublic have also formed joint ventures. Compl. ¶ 11.

Dattels is the managing director of an Asian investment vehicle controlled by Texas Pacific Group. KKR and Texas Pacific maintain various business and investment interrelationships, including joint leadership of a $3.65 billion buyout of Texas Geneco in July 2004. That same buyout consortium sold Texas Geneco for approximately $5.8 billion less than a year after its acquisition.

Defendant Thomas Unger, a current director of Primedia, was elected to the board effective September 22, 2005. Unger is a principal of KKR.

In October 2003, defendant Kelly Conlin became president, chief executive officer, and a director of Primedia. Conlin held those positions until he left Primedia on October 24, 2005.

Defendant Joseph Bae became a Primedia director in 2002 and served continuously until his resignation on September 22, 2005. Bae is a limited partner of KKR Associates and is a KKR executive.

### 3. *The Challenged Transactions*

### a. *The Outstanding Preferred Stock*

The plaintiffs' substantive allegations involve the propriety and fairness of Primedia's redemption of four separate classes of its preferred stock in 2004 and 2005. The Series D stock was issued in August 1996, was publicly traded, and carried a dividend rate of 10%. Primedia was not required to redeem the Series D stock until February 2008. The Series F stock was issued in January 1998, was publicly traded, and carried a dividend rate of 9.2%. The company was not required to redeem the Series F stock until November 2009. The Series H stock was issued in June 1998, was publicly traded, and carried a dividend rate of 8.625%. Primedia was not required to redeem the Series H stock until April

2010. The Series J stock was issued directly to KKR 1996 Fund, was not publicly traded, and carried a dividend rate of 12.5%. As noted above, KKR, via KKR 1996 GP, possessed sole voting and investment power over KKR 1996 Fund. Primedia issued the Series J stock for $125 million in August 2001. The Series J stock had no mandatory redemption date. Rather, Primedia could call the Series J stock at any time pursuant to an affirmative vote of a majority of Primedia's independent directors.

### b. *The Preferred Stock Purchases*

Primedia experienced a severe decline in the price of its common stock between 2000 and 2002. By July 2002, the common stock traded at less than $1 per share, down from $29.25 per share in April 2000. Thus, KKR Associates and KKR 1996 GP saw roughly $4.5 billion of the market value of their Primedia holdings evaporate in just over two years. The market prices of Primedia's preferred issuances reflected the ill fortune of its common stock, trading at significant discounts to par value by mid–2002.

Between July 8, 2002 and November 8, 2002, an investment vehicle called ABRA III LLC purchased substantial blocks of the Series D, Series F, and Series H preferred stock. According to Primedia's SEC filings, ABRA is an "investment vehicle managed by KKR." [6] Further, KKR Partners (International) Limited Partnership owns a direct 4.06% equity interest in ABRA. Every member of the general partnership that controls KKR International is a member of the limited liability company that serves as the general partner of KKR.

In the above mentioned four month period, ABRA purchased 35.8% of the outstanding shares of the Series D stock,

---

**6.** Compl. ¶ 35.

57.9% of the outstanding shares of the Series F stock, and 52.7% of the outstanding shares of the Series H stock. ABRA made these purchases on the open market at discounts ranging from 64.8% to 69.8% of the particular stock's liquidation preference.

### c. The Asset Sales And The Preferred Stock Redemptions

Following ABRA's purchases, Primedia initiated a series of asset sales.[7] Primedia then used the proceeds from these asset sales to redeem its outstanding preferred stock.

On July 7, 2004, Primedia paid $178 million to KKR 1996 Fund to redeem the Series J stock. Although the redemption was not mandatory, the transaction resulted in KKR 1996 Fund realizing in less than three years a gain of $53 million on a $125 million investment.[8] The certificate of designation for the Series J stock required that a majority of Primedia's independent directors approve the redemption.

On May 11, 2005, Primedia redeemed all of the Series D and Series F stock. The Series D stock was called at 101% of its liquidation preference plus accrued but unpaid dividends.[9] The Series F stock was called at 100% of its liquidation preference plus accrued but unpaid dividends.[10] No special committee evaluated the fairness of these redemptions. On October 31, 2005, Primedia redeemed all of the Series H stock at 101.438% of its liquidation preference plus accrued but unpaid dividends.[11] No special committee approved this transaction.

As a result of the Series D, Series F, and Series H stock redemptions, ABRA received over $222.6 million in gross proceeds and realized a net profit of approximately $150 million from an investment made only three years earlier.

### II.

Plaintiff Alan Spiegal filed this derivative suit against KKR and the director defendants on February 16, 2006. One week later, the court consolidated Spiegal's suit with a prior filed action by Linda Parnes Kahn. Spiegal's complaint became the operative pleading. The defendants originally moved to dismiss the complaint

7. Primedia sold its main consumer magazines, including *Seventeen, American Baby, Chicago Magazine, Business Magazine, Modern Bible Magazine, New York Magazine,* as well as its interests in Kagan World Media, About Web Services, Media, Inc., and About, Inc. Compl. ¶ 24. The complaint does not mention the terms of the sales, the counterparties to the sales, or the closing date of the sales. However, the plaintiffs do not contend that the asset sales themselves were unfair to Primedia. The preferred stock redemptions are the disputed transactions.

8. The Series J certificate of designation provided for a redemption price of $125 per share "plus an amount in cash equal to all accumulated and unpaid dividends per share (including an amount equal to a prorated dividend from the last Dividend Payment Date to the Redemption Date)." Def. Dirs.' Opening Br. Ex. 4 § 5(a)(i).

9. The Series D certificate of designation provided for an "optional redemption price" of 101%, as expressed as a percentage of the stock's liquidation preference, plus accrued but unpaid dividends. Def. Dirs.' Opening Br. Ex. 1 § 5(a)(i).

10. The Series F certificate of designation provided for an "optional redemption price" of $100 (which was an identical amount as the stock's liquidation preference), plus accrued but unpaid dividends. Def. Dirs.' Opening Br. Ex. 2 § 5(a)(ii).

11. The Series H certificate of designation provided for an "optional redemption price" of $101.438, plus accrued but unpaid dividends. The stock's liquidation preference was $100. Def. Dirs.' Opening Br. Ex. 3 § 5(a)(i).

pursuant to Court of Chancery Rule 12(b)(6). In lieu of opposing that motion, the plaintiffs chose to amend the complaint. The defendants now renew their motions to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The court heard oral argument on the motions on September 25, 2006.

The complaint states that KKR and the director defendants breached their fiduciary duty of loyalty by causing Primedia to call, on terms unfair to the corporation, hundreds of millions of dollars worth of preferred stock which it was not yet legally obligated to redeem. According to the plaintiffs, the redemptions enriched KKR because ABRA's preferred stock holdings, which it had only recently purchased at deep discounts on the market, were called at the full redemption price.

The plaintiffs argue that the redemptions are not protected by the business judgment rule and allege that the redemptions were self-interested transactions effectuated by a controlling stockholder. KKR, they allege, exercised actual control over Primedia with respect to the redemptions and KKR reaped a financial benefit via ABRA that was not shared by the other common stockholders.[12] Further, the board of directors approved the stock redemptions at the behest of KKR. Allegedly, not a single member of the board was independent. Rather, each was beholden to KKR in some fashion and was unable to exercise independent and disinterested judgment with respect to the challenged transactions. Due to KKR's position on both sides of the stock redemptions and its control over Primedia's non-independent board of directors, the plaintiffs say, the defendants bear the burden of showing entire fairness. Therefore, dismissal of the complaint pursuant to Rule 12(b)(6) is improper.

KKR disputes the plaintiffs' assertion that it exercises actual control over Primedia. KKR argues that the mere fact it is affiliated with, or under common control with, KKR Associates and KKR 1996 GP is insufficient to infer that it controls these entities. Because KKR could not have exercised control over the preferred stock redemptions, those transactions were not self-dealing. Therefore, it says, the business judgment rule should attach.

Additionally, even if KKR did control Primedia, economic rationality dictates that KKR had a disincentive to redeem the preferred stock on terms unfair to the common stockholders since an unfair redemption would damage KKR's larger (at least in percentage terms) common stock position. This last argument, while carrying some logical force, can only be addressed on a fully developed record.

The director defendants take a somewhat anomalous position. While choosing not to challenge the propriety of the plaintiffs' suit on demand futility grounds or

**12.** According to the plaintiffs, the fact that Primedia could have purchased the stock on the open market and retired it at a lower cost to the company is evidence of the transactions' unfairness. Of course, the validity of this argument requires that the certificates of designation for the preferred stock not prohibit Primedia from repurchasing the stock on the open market. Indeed, each of the certificates of designation contained a contingent prohibition on repurchases: Primedia could not repurchase any of the Series D, Series F, or Series H stock unless the company was current in its dividend payments on each of these issuances. *See* Def. Dirs.' Opening Br. Exs. 1, 2, 3 §§ 3(g)-(h). Because none of the parties have addressed this issue directly and because of the liberal notice pleading standard of Rule 12(b)(6), the court can reasonably infer from the allegations in the complaint that Primedia was current on all dividend payments and, therefore, open market repurchases were not prohibited.

Court of Chancery Rule 23.1, the director defendants nonetheless argue that the complaint fails to allege facts from which the court could infer that the directors who approved the redemptions were beholden to KKR or otherwise subject to a disabling interest.[13] Because they were disinterested and independent, they say, the business judgment rule should protect the stock redemptions from *ex post* judicial scrutiny. In essence, those transactions were nothing more than rational decisions to decrease Primedia's cost of capital, since the dividend rates on all of the preferred stock exceeded the rates prevailing in the market.[14]

Both KKR and the director defendants claim that the Series J stock was redeemed by an affirmative vote of a majority of the board's independent directors. Finally, all of the defendants argue that the plaintiffs have not sufficiently alleged an injury to Primedia. The plaintiffs' sole theory is that the board could have used the funds from the asset sales for a purpose other than the redemptions. This theory of harm, the defendants say, is not cognizable under Delaware law. Rather, it is an attempt to substitute the plaintiffs' hindsight-aided second guessing for the sound business discretion of Primedia's board.

## III.

A court should deny a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6) "unless it can be determined with reasonable certainty that the plaintiff could not prevail on any set of facts reasonably inferable" from the pleadings.[15] The court must assume the truthfulness of the well pleaded allegations in the complaint and must afford the party opposing the motion "the benefit of all reasonable inferences."[16] "What this effectively means is that the court must consider the various factual permutations reasonably possible within the framework of the plaintiff's allegations and conclude whether any one conceivable set of facts could possibly merit granting [the] plaintiff relief. If so, the claim cannot be dismissed."[17] However, mere conclusions are not accepted as true absent specific allegations of fact which support them.[18]

## IV.

The facts alleged, when viewed in a light most favorable to the plaintiffs, adequately form a basis for fiduciary duty claims that survive the defendants' challenge under Rule 12(b)(6). KKR is adequately alleged to have exerted control over Primedia's

---

13. This position is odd because the "reasonable doubt" standard used in a demand futility analysis provides a higher hurdle for a plaintiff than the relatively lenient standard of review pursuant to Rule 12(b)(6). *In re The Limited, Inc. S'holders Litig.*, 2002 WL 537692, at *7 (Del.Ch. Sept. 28, 2002).

14. The underlying rationality of a decision to opt for financing with a lower interest rate is not in question. Indeed, if KKR-controlled entities did not own a substantial amount of the preferred stock, the redemptions would be protected by the business judgment rule. However, the procedures and terms of a corporate refinancing deserve heightened scrutiny when a controlling stockholder stands to benefit not only from the corporation's reduced cost of capital but also from its indirect interest in the method of refinancing chosen by the board.

15. *Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 908 (Del.Ch.2002) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)).

16. *Id.*

17. *In re New Valley Corp. Deriv. Litig.*, 2001 WL 50212, at *4 (Del.Ch. Jan. 11, 2001).

18. *Solomon*, 672 A.2d at 38.

board of directors, all of whom were beholden to KKR in some fashion, and to have caused the company to redeem the outstanding preferred stock at full redemption prices, both years before such action was contractually mandated and without the intermediation of any independent bargaining agent or decision maker to assure fairness to Primedia. Because two entities controlled and managed by KKR (ABRA and KKR 1996 Fund) owned substantial amounts of the preferred stock, KKR stood on both sides of the challenged transactions. Thus, according to the complaint, KKR caused Primedia to undertake a corporate action that conferred an exclusive benefit upon KKR—namely, a sizable profit from the allegedly unfair preferred stock redemptions—and that simultaneously damaged the financial interests of Primedia and its other common stockholders. These allegations, if ultimately proven true, would constitute a breach of the fiduciary duty of loyalty that KKR and the director defendants owed to Primedia's minority stockholders under the rubric of *Sinclair Oil Corp. v. Levien.*[19] Therefore, the defendants' motions to dismiss must be denied.

A. *The Plaintiffs Sufficiently Plead That KKR Exercised Control Over Primedia*

■ KKR correctly asserts that for it to have fiduciary obligations to Primedia, the plaintiffs must show KKR effected actual control over the corporate actions challenged in the complaint. Without citing any analogous case law, KKR argues that no facts exist from which the court could reasonably infer that it exerts control over Primedia vis-á-vis KKR 1996 GP and KKR Associates.

It is well settled law that only a "controlling stockholder" owes fiduciary duties to other stockholders.[20] A stockholder can meet this "control" test in one of two ways. First, ownership of more than 50% of the voting power of a corporation satisfies the "control" test.[21] Alternatively, a stockholder stands as a fiduciary if it "exercises control over the business and affairs of the corporation."[22]

For the plaintiffs to survive a motion to dismiss, they must allege domination by KKR through actual control of Primedia's corporate conduct.[23] The bare allegation that KKR possessed the potential ability to exercise control is insufficient.[24] However, the plaintiffs need not demonstrate that KKR oversaw the day-to-day operations of Primedia. Allegations of control over the particular transaction at issue are enough.[25]

Based on the facts alleged in the complaint, KKR's argument that it is not a controlling stockholder of Primedia must fail. Given the threshold standard at this stage of the litigation, the facts clearly support a reasonable inference that KKR exerted actual control over Primedia dur-

---

19. 280 A.2d 717 (Del.1971).

20. *Kahn v. Lynch Commc'n Sys., Inc.,* 638 A.2d 1110, 1113–14 (Del.1994).

21. *Id.*

22. *Id.*

23. *Williamson v. Cox Commc'ns, Inc.,* 2006 WL 1586375, at *4 (Del.Ch. June 5, 2006)

(citing *O'Reilly v. Transworld Healthcare, Inc.,* 745 A.2d 902, 912 (Del.Ch.1999)).

24. *Id.* (citing *In re Sea–Land Corp. S'holders Litig.,* 1987 WL 11283, at *5 (Del.Ch. May 22, 1987)).

25. *Id.* (citing *In re Western Nat'l Corp. S'holders Litig.,* 2000 WL 710192, at *20 (Del.Ch. May 22, 2000)).

ing the course of the preferred stock redemptions.[26]

First, the discussions of KKR's control contained in Primedia's SEC filings indicate that KKR was the influential force behind the stock redemptions. Attempting to convince the court otherwise, counsel for KKR argues that the proxy statement language "cannot be deemed an admission by KKR."[27] This evidentiary issue is of no consequence on a motion to dismiss. Whether or not such statements ultimately are attributable to KKR, their mere presence in the context of a Rule 12(b)(6) motion implicates KKR as a controlling stockholder who dominated and dictated Primedia's important financing decisions, such as those at issue.

Second, the number of KKR associates on Primedia's board supports an inference of actual control. The fact that an allegedly controlling stockholder appointed its associates to the board of directors is certainly an important factor that provides a court with insight when evaluating whether actual control is pleaded adequately.[28] While KKR's nomination of its associates to Primedia's board, without more, does not establish actual domination,[29] this is not a case where the plaintiffs allege control solely on the grounds that KKR made such appointments.

Finally, the course of dealing present here suggests that KKR enjoyed actual control over the stock redemptions. Even though KKR had a financial stake in the preferred stock through ABRA and KKR 1996 Fund,[30] the complaint alleges that no independent committee of the board was formed to consider the early redemption of the preferred stock. Even though the Series D, Series F, and Series H stocks were allegedly all trading at significant discounts, the proceeds from the asset sales were not used to repurchase the publicly traded stocks at a discount on the open market.[31] The particular course of dealing alleged in the complaint supports

---

**26.** In its briefing and at oral argument, KKR maintains that it is an improper defendant to this lawsuit. At the summit of Primedia's "entity chain," KKR says, are the individual persons who are members of the LLC that controls KKR. The fact that many of these same individuals control the entities that dominate Primedia, they say, simply means that KKR is an affiliate of Primedia, not its controlling stockholder. While KKR's argument does carry some force, the facts in this complaint are sufficiently alarming to deny KKR's motion. KKR is a private company. Virtually no information exists in the public domain that sheds even a sliver of light on KKR's ultimate ownership structure. The absence of such information makes Primedia's SEC filings, which are public and which affirmatively identify KKR as the controlling entity of Primedia, all the more persuasive in the court's present analysis. Further, this court has allowed, in like circumstances, a derivative suit to proceed against an entity's affiliate under a theory of common control. *See, e.g., Wallace v. Wood,* 752 A.2d 1175 (Del.Ch.1999) (denying a Rule 12(b)(6) motion where the plaintiffs sufficiently alleged that an affiliate

of the parent of the nominal defendant-entity enriched itself at the expense of the nominal defendant-entity).

In any event, discovery in this case may ultimately validate KKR's argument. The plaintiffs here are on notice of this defense. And if the discoverable facts refute the disclosures in Primedia's SEC filings, the court would expect to entertain a dispositive motion from KKR at that time.

**27.** Def. KKR's Am. Opening Br. 9.

**28.** *Williamson,* 2006 WL 1586375, at *4.

**29.** *Id.* (citing *Sea–Land,* 1987 WL 11283, at *5).

**30.** *See* part IV–B *infra.*

**31.** As noted above, the court can reasonably infer that no dividends were in arrears on the Series D, Series F, or Series H shares that would have prevented Primedia from repurchasing that stock on the market. *See* note 12 *supra.*

an inference that KKR exerted its power over Primedia's directors in connection with the challenged transactions.[32]

Therefore, on the facts alleged in the complaint, the court can reasonably infer that KKR exercised actual control over Primedia and used that control to cause Primedia to enter into an unfair self-dealing transaction without any procedural safeguards to protect the minority stockholders. These allegations of fact, if proven at trial, suffice to remove the protection of the business judgment rule.[33]

B. *The Plaintiffs Sufficiently Plead That KKR Controlled ABRA And KKR 1996 Fund And Thus Stood On Both Sides Of The Stock Redemptions*

■ When viewed in a light most favorable to the plaintiffs, the facts contained in the complaint create a reasonable inference that KKR both exercised control over ABRA and indirectly owned a material amount of the equity of that entity. Primedia's SEC filings explicitly state that ABRA is "an investment vehicle managed by KKR." Additionally, KKR Partners International owns 4.06% of ABRA's equity. Each of the members of the entity that serves as general partner of KKR Partners International is a member of the limited liability company that serves as general partner of KKR. These facts raise a strong inference that KKR possessed ownership and control over ABRA's investment decisions and that KKR thus had an interest in the Series D, Series F, and Series H stock redemptions that differed

from that of Primedia's other common stockholders.

KKR's interest in the Series J transaction is not subject to serious debate. KKR controlled KKR 1996 Fund through its dominion over KKR 1996 GP. This allegation is supported by the requirement that the Series J stock could only be redeemed by a majority vote of Primedia's independent directors.

Since the pleaded facts support an inference that KKR controlled ABRA and KKR 1996 Fund and stood to benefit from the stock redemptions to the exclusion and detriment of the other common stockholders, the decisions to redeem are not, at least at this stage of the proceeding, protected by the operation of the business judgment rule. Rather, some higher level of scrutiny, such as entire fairness, may be appropriate.

C. *The Plaintiffs Sufficiently Plead That KKR Received An Exclusive Benefit From The Stock Redemptions That Correspondingly Harmed Primedia's Minority Stockholders, And The Motions To Dismiss Must Be Denied*

■ Delaware courts have examined cases on prior occasions with substantially similar facts to those alleged by the plaintiffs here. The controlling question, for present purposes, is this: outside of the squeeze-out merger context, what standard of review should a court employ where a parent entity or a controlling stockholder causes the controlled corporation to enter into a transaction that harms the controlled corporation but, at the same

---

**32.** Such an inference is buttressed further by the defendant directors' decision not to challenge the complaint for failure to make a demand under Rule 23.1, thus practically conceding the non-independence of Primedia's board at the time the complaint was filed. *See* note 45 *infra*.

**33.** *Sinclair Oil,* 280 A.2d at 720; *see also Tooley v. AXA Fin., Inc.,* 2005 WL 1252378, at *5 (Del.Ch. May 13, 2005) (noting that the plaintiffs' allegation of facts are barely sufficient to rebut the presumption of the business judgment rule).

time, confers a unique benefit upon the parent or controlling stockholder?

The Delaware Supreme Court addressed this question long ago in *Sinclair Oil Corp. v. Levien.*[34] The court held there that, in certain circumstances, when a controlling entity or stockholder causes a corporation to enter into a self-dealing transaction and controls the terms of the transaction, the business judgment rule is inapplicable. As the court noted:

> A parent does indeed owe a fiduciary duty to its subsidiary when there are parent-subsidiary dealings. However, this alone will not invoke the intrinsic fairness standard. This standard will be applied only when the fiduciary duty is accompanied by self-dealing—the situation when a parent is on both sides of a transaction with its subsidiary. Self-dealing occurs when the parent, *by virtue of its domination of the subsidiary,* causes the subsidiary to act in such a way that *the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders* of the subsidiary.[35]

The lesson from *Sinclair Oil* is that when a "stockholder asserts differential treatment, the motivations of the board are not relevant in determining whether differential treatment occurred, but rather, the end result of the board action is what is relevant."[36]

In *Sinclair Oil,* the plaintiff's claim that the parent unfairly caused the subsidiary corporation to pay excessive dividends failed.[37] Although the dividends presumably harmed the subsidiary, the plaintiff could not prove that the parent exacted an exclusive benefit from its control over the subsidiary's actions.[38] The complaining minority stockholder received the same pro rata share of the dividends as did the controlling stockholder.[39] Therefore, the court dismissed the plaintiff's claim.

A similar situation presented itself in *Tooley v. AXA Financial, Inc.*[40] The plaintiffs there alleged that the controlling stockholder caused the board of directors to extend the time period of a tender offer.[41] The court denied the defendants' motion to dismiss under Rule 12(b)(6), applying the *Sinclair Oil* test.[42] Because the controlling stockholder received an exclusive benefit from the extension—the avoidance of sizable administrative costs—and the minority stockholders suffered a corresponding detriment—a delay in payment of the tender offer proceeds—the plaintiffs stated a cognizable claim.[43]

Without question, the plaintiffs allege facts here that state a claim under the *Sinclair Oil* framework of analysis. Through its domination of Primedia's board, KKR caused the company to redeem hundreds of millions of dollars worth of preferred stock. This was done without the intermediation of any independent bargaining or decision-making agent designed to assure the fairness of the deal. As a

34. 280 A.2d 717.

35. *Id.* at 720.

36. *Tooley,* 2005 WL 1252378, at *6.

37. 280 A.2d at 721–22.

38. *Id.* at 721.

39. *Id.*

40. 2005 WL 1252378.

41. *Id.* at *1–*2.

42. It should be noted that the *Tooley* decision applied the *Sinclair Oil* framework to the individual director defendants' motions to dismiss as well as to the controlling stockholder's motion to dismiss. *Id.* at *1, *7.

43. *Id.* at *6–*7.

result, KKR, through its ownership and control positions in ABRA and in KKR 1996 Fund, received an exclusive benefit— a windfall profit from its stake in the preferred stock issues. Unlike the plaintiffs in *Sinclair Oil*, the other common stockholders of Primedia did not share in this payout.[44] But, as was the case in *Sinclair Oil*, the alleged facts suggest that the plaintiffs did suffer a detriment because of KKR's self-interested actions, namely the harm resultant from Primedia's premature payment of an excessive price to redeem the preferred stock. Therefore, the plaintiffs state a claim under *Sinclair Oil* and its progeny that must survive the defendants' motions to dismiss.[45]

**44.** The minority stockholders may have benefited pro rata along with KKR from a reduction in Primedia's cost of capital. But, to the extent Primedia was forced to overpay in making the redemption, the overpayment was made to KKR and the other preferred stockholders.

**45.** It is important to note here that none of Primedia's directors can be considered independent for purposes of these motions. The court must apply the deferential Rule 12(b)(6) standard to the question of independence, since the defendants have not moved to dismiss the complaint under Rule 23.1. *See* note 13 *supra; compare Aronson v. Lewis,* 473 A.2d 805, 816 (Del.1984) (noting that in the demand context, a plaintiff must allege *particular facts that create a reasonable doubt* as to the directors' disinterest or independence for a derivative claim to proceed) (emphasis added). When a plaintiff pleads facts demonstrating that "the directors are 'beholden' to [a controlling person or entity] or so under their influence that their discretion would be sterilized," a lack of independence is shown. *Orman v. Cullman,* 794 A.2d 5, 24 (Del.Ch. 2002) (citing *Aronson,* 473 A.2d at 815). A director may be considered beholden to, and controlled by, another entity when that entity, directly or indirectly, has the unilateral power to decide whether the director "continues to receive a benefit, financial or otherwise,

### D. *The Plaintiffs Sufficiently Plead An Injury To Primedia*

 Both KKR and the director defendants argue that the plaintiffs cannot show how the preferred stock redemptions harmed Primedia and its common stockholders, essentially because the redemptions were all accomplished at the prices set in the certificates of designation. However, the alleged facts do create a basis for establishing a cognizable injury to the company. Additionally, the possibility that the defendants breached their duty of loyalty counsels against the court imposing too narrow a definition of damages or harm.

 The theoretical grounds for damages here are straightforward. The

upon which the challenged director is so dependent or is of such material importance to him that the threatened loss of that benefit might create a reason to question whether the controlled director is able to consider the corporate merits of the challenged transaction objectively." *Id.* at 25 n. 50.

Under the Rule 12(b)(6) standard of review here, the court can conclude that all of the defendant directors were beholden to, or controlled by, KKR during the stock redemptions. Chell and Conlin were Primedia executives and their continued employment depended on the good graces of KKR. The compensation from one's full-time employment is "typically of great consequence" to the recipient. *In re The Student Loan Corp. Deriv. Litig.,* 2002 WL 75479, at *3 n. 3 (Del.Ch. Jan. 8, 2002). Greeniaus, Nelson, Bell, Dattels, and Feldberg all had substantial past or current relationships, both of a business and of a personal nature, with KKR. When these relationships are viewed in a light most favorable to the plaintiffs, the court can infer that each of them felt a "sense of 'owingness'" to their mutual patron. *Orman,* 794 A.2d at 27 n. 55 (citing *In re Ply Gem Indust., Inc. S'holders Litig.,* 2001 WL 1192206 (Del.Ch. Sept. 28, 2001)). Kravis, Golkin, Unger, and Bae possessed either ownership or managerial ties to KKR that, for purposes of a Rule 12(b)(6) review, overshadowed their fiduciary responsibilities to Primedia.

plaintiffs assert that, because of KKR's self-dealing behavior and the director defendants' conflicting loyalties, Primedia was forced to prematurely redeem the preferred shares at full redemption value. If the plaintiffs ultimately prove such a breach of the duty of loyalty, this court should not unduly narrow the scope of their recovery.[46] Even in a case where transactional damages are not present, a disloyal fiduciary may still be held liable for incidental damages.[47] Concerns of equity and deterrence justify "loosen[ing] normally stringent requirements of causation and damages" when a breach of the duty of loyalty is shown.[48] As the Delaware Supreme Court long ago noted, the duty of loyalty "does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for purposes of removing all temptation, extinguishes all possibility of profit flowing from the breach of confidence imposed by the fiduciary relation."[49]

## V.

For the foregoing reasons, the defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) are DENIED. IT IS SO ORDERED.

---

**46.** *Thorpe v. CERBCO, Inc.,* 676 A.2d 436, 445 (Del.1996).

**47.** *Id.*

**48.** *Id.* (quoting *Milbank, Tweed, Hadley & McCloy v. Boon,* 13 F.3d 537, 543 (2d Cir. 1994)).

**49.** *Guth v. Loft, Inc.,* 5 A.2d 503, 510 (Del. 1939).