**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 2, 2024

Michael Hanrahan, Esquire
Prickett, Jones & Elliott, P.A.
1310 North King Street
Wilmington, DE  19801

David E. Ross, Esquire
Ross Aronstam & Moritz LLP
100 South West Street Suite 400
Wilmington, DE  19801

Blake Rohrbacher, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

William M. Lafferty, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19801

RE: ***In re Match Group, Inc. Derivative Litigation,***
Civil Action No. 2020-0505-MTZ

Dear Counsel:

I trust you have working familiarity with the allegations and procedural posture of this matter; any readers without that knowledge should refer to my 2022 opinion,[1] from which this letter borrows defined terms, and the Delaware Supreme Court's 2024 opinion.[2]  This letter decision addresses the alternative grounds for dismissal that defendants Barry Diller, Joey Levin, Glenn Schiffman, Mark Stein, Gregg Winiarski, and Alan Spoon (together, the "Moving Defendants") asked me to

---

[1] *In re Match Gp., Inc. Deriv. Litig.* ("*Match I*"), 2022 WL 3970159 (Del. Ch. Sept. 1, 2022), *aff'd in part, rev'd in part, and remanded*, 315 A.3d 446 (Del. 2024).

[2] *In re Match Gp., Inc. Deriv. Litig.* ("*Match II*"), 315 A.3d 446 (Del. 2024).

resolve.[3]  It concludes the plaintiffs have not pled Diller owes fiduciary duties as a controller of Old Match, but that they have pled nonexculpated claims against the other Moving Defendants.

## I.    BACKGROUND

The allegations relevant to the Moving Defendants' alternative grounds for dismissal are few.  Plaintiffs contend Diller owed fiduciary duties as Old Match's ultimate controller because he controlled Old IAC and Old IAC controlled Old Match.[4]  Diller and his family owned 42.9% of Old IAC's voting power, primarily through their sole ownership of Old IAC's high-vote Class B common stock.[5]  Diller was Old IAC's CEO from 1995 to 2010 and has since served as chairman and senior executive.[6]  Plaintiffs allege he gave interviews about Old IAC's strategy, exerted control over Old IAC's operations, and held the power to influence corporate actions requiring stockholder approval.[7]  According to Plaintiffs, Diller used his influence

---

[3] Docket item ("D.I.") 130.

[4] *See* D.I. 87 [hereinafter "Am. Compl."] ¶ 227.

[5] *Id.* ¶¶ 19–20.

[6] *Id.* ¶ 20.

[7] *Id.* ¶¶ 38, 90–93.

and voting power to pack Old IAC's board with loyalists.[8]  The Amended Complaint also cites Old IAC's 2019 annual report, which disclosed Diller and his family were in a "position to influence . . . the composition of" Old IAC's board.[9]

The parties do not dispute that Old IAC was Old Match's controller.  As of 2015, Old IAC held 98.2% of Old Match's voting power.[10]  Diller himself held no Old Match voting power.  Plaintiffs allege "IAC and Diller have used IAC's voting control to fill" Old Match's ten-member board "with current and former IAC executives (i.e., Levin, McInerney, Schiffman, Stein, and Winiarski), IAC directors (i.e., Levin and Spoon) and/or IAC/Diller loyalists (i.e., Seymon and McDaniel)."[11]  Plaintiffs describe Levin as a "corporate insider" or "loyalist."[12]  They allege McInerney "owed a deep debt of gratitude to IAC and Diller for his personal

---

[8] *Id.* ¶ 38 (counting among "corporate insiders and other loyalists" Old IAC directors Diller, Diller's stepson, Levin, Victor Kaufman, Michael Eisner, Bonnie Hammer, Chelsea Clinton, and Bryan Lourd, and alleging "Eisner, Hammer, Clinton, and Lourd all have close ties to Diller").

[9] *Id.* ¶ 38 n.18.

[10] *Id.* ¶ 42.

[11] *Id.* ¶ 44.

[12] *Id.* ¶ 38; *see also id.* ¶ 203 ("When asked what has made the partnership with Diller work so well, Levin said that:  'It's really two things:  trust and transparency.  I trust him completely, he trusts me completely, and we have absolute transparency on what we're doing.'").

success" and his career opportunities.[13] Plaintiffs also allege Spoon was "entangled" with Diller, citing a law review article that details their history at Ticketmaster, The HealthCentral Network, IAC, and Match.[14]

Plaintiffs have also brought breach of fiduciary duty claims against Levin, Schiffman, Stein, Winiarski, and Spoon (the "Dual Fiduciary Defendants") in their own right as Old Match directors.[15] Each was a director or officer of both Old IAC and Old Match when he voted to approve the Separation.[16] Levin chaired the Old Match board and was Old IAC's CEO and an Old IAC director.[17] Schiffman was an Old Match director and Old IAC's CFO.[18] Stein was an Old Match director and Old

---

[13] *Id.* ¶ 157; *Match II*, 315 A.3d at 472 ("Directors who owe their success to another will conceivably feel as though they owe a 'debt of gratitude' to the individual. The plaintiffs have adequately pleaded that McInerney may have such a relationship with IAC and Diller." (footnote omitted) (quoting *Marchand v. Barnhill*, 212 A.3d 805, 820 (Del. 2019)).

[14] Am. Compl. ¶ 28.

[15] *Id.* ¶¶ 239–45.

[16] *Id.* ¶¶ 23, 27–30.

[17] *Id.* ¶ 23.

[18] *Id.* ¶ 27.

IAC's chief strategy officer.[19] Winiarski was an Old Match director and Old IAC's general counsel.[20] Spoon was an Old Match director and an Old IAC director.[21]

Plaintiffs plead the Old Match board adopted resolutions approving the Separation at a meeting on December 18, 2019.[22] Each Dual Fiduciary Defendant voted in favor of the Separation.[23] Plaintiffs allege additional involvement from Levin and Schiffman: Levin discussed the possibility of an Old Match spinoff on television, and Levin and Schiffman negotiated aspects of the Separation with McInerney over telephone.[24]

## II. ANALYSIS

The standard governing the Moving Defendants' motion is familiar:

(i) [A]ll well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate

---

[19] *Id.* ¶ 29.

[20] *Id.* ¶ 30.

[21] *Id.* ¶ 28.

[22] *Id.* ¶¶ 144–48.

[23] *See* D.I. 91, Ex. 1 at 152.

[24] Am. Compl. ¶¶ 56, 130; *see also id.* ¶¶ 113–15.

unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[25]

The touchstone "to survive a motion to dismiss is reasonable 'conceivability.'"[26] This standard is "minimal"[27] and plaintiff-friendly.[28] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove [its] claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[29] Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the nonmoving party.[30] "Moreover, the court is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[31] In determining

---

[25] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[26] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[27] *Id.* at 536.

[28] *E.g.*, *Clouser v. Doherty*, 175 A.3d 86, 2017 WL 3947404, at *9 (Del. 2017) (TABLE); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *3–4 (Del. Ch. Mar. 11, 2021), *aff'd sub nom. Anderson v. Leer*, 265 A.3d 995 (Del. 2021); *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[29] *Cent. Mortg.*, 27 A.3d at 536.

[30] *E.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[31] *Trados*, 2009 WL 2225958, at *4 (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

whether to grant a motion to dismiss, the Court may consider any documents incorporated into the complaint by reference.[32]

### A. Diller

Plaintiffs assert Diller is an Old Match controller who owed, and breached, fiduciary duties to Old Match minority stockholders. They allege that Diller controlled Old IAC, and that Old IAC controlled Old Match. On that basis alone, citing *In re EZCORP Inc. Consulting Agreement Derivative Litigation*, Plaintiffs argue Diller was Old Match's ultimate controller.[33]

It is well established under Delaware law that controllers owe fiduciary duties to minority stockholders.[34] A controller either (1) owns "more than 50% of the voting power of [the] corporation" and therefore enjoys hard control, or (2) "exercises control over the business and affairs of the corporation," with actual control comprising some amount of soft control.[35] Stock ownership that amounts to

---

[32] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

[33] 2016 WL 301245 (Del. Ch. Jan. 25, 2016).

[34] *In re Primedia Inc. Deriv. Litig.*, 910 A.2d 248, 257 (Del. Ch. 2006).

[35] *Id.* at 257; *accord Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1114 (Del. 1994) ("This Court has held that 'a shareholder owes a fiduciary duty only if it owns a majority interest in or *exercises control* over the business affairs of the corporation.'" (quoting *Ivanhoe P'rs v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987) and adding

less than half of the voting power "is not sufficient proof of domination or control."[36]

"For a dominating relationship to exist in the absence of controlling stock ownership, a plaintiff must allege domination by a minority shareholder through actual control of corporate conduct."[37]  The mere potential to exercise control is insufficient.[38]

*EZCORP* found that an individual controlled a corporation through his control of the corporation's sole owner.[39]  There, the individual defendant owned all of the stock of a corporation; the corporation was the sole general partner that controlled a limited partnership; and that limited partnership, in turn, owned all of EZCORP's

---

emphasis)); *In re Oracle Corp. Deriv. Litig.*, 2023 WL 3408772, at *19 (Del. Ch. May 12, 2023).

[36] *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 122–23 (Del. Ch. 1971)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[37] *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 70 (Del. 1989); *Weinstein Enters., Inc. v. Orfloff*, 870 A.2d 499, 507 (Del. 2005) ("For a stockholder that owns less than a numerical majority of a corporation's voting shares to be deemed a controlling stockholder for purposes of imposing fiduciary obligations, the plaintiff must establish the *actual exercise* of control over the corporation's conduct by that otherwise minority stockholder.").

[38] *Thermopylae Cap. P'rs, L.P. v. Simbol, Inc.*, 2016 WL 368170, at *13 (Del. Ch. Jan. 29, 2016); *Klein v. H.I.G. Cap., L.L.C.*, 2018 WL 6719717, at *13 (Del. Ch. Dec. 19, 2018) ("[T]he 'potential to exercise control' is not enough to impose fiduciary obligations." (quoting *In re Sea-Land Corp. S'holders Litig.*, 1987 WL 11283, at *5 (Del. Ch. May 22, 1987))).

[39] *EZCORP*, 2016 WL 301245, at *10.

Class B voting stock.[40]  As a result, the individual defendant controlled "100% of EZCORP's voting power"[41] and therefore had "hard control" of EZCORP.[42]  By holding more than 50% of EZCORP's voting power, he had the "ability to remove, and thus influence, the directors."[43]

Here, Plaintiffs focus on Diller's actual control over Old IAC.  Diller's 42.9% voting power in Old IAC, together with his apparent input into Old IAC's strategy and his deep ties with Old IAC's board, support the reasonable pleading-stage inference that he actually controlled Old IAC.  From there, Plaintiffs argue that because Old IAC had hard control of Old Match, Diller must be Old Match's ultimate controller under *EZCORP*.  But I do not read *EZCORP* to stand for the proposition that the controller of a parent company is the subsidiary's ultimate controller, always and as a matter of law.  Put differently, *EZCORP* does not identify a transitive property of control that redounds through every chain of controllers.  Rather, *EZCORP* applied the first prong of the traditional controller analysis to successive holders of 100% voting power, culminating in hard control of the entity

---

[40] *Id.* at *2.

[41] *Id.*

[42] *Oracle*, 2023 WL 3408772, at *26.

[43] *See id.* at *19.

at the bottom. Plaintiffs have not pled Diller has hard control of Old IAC's voting power that would necessarily grant him control of Old Match's voting power. *EZCORP* does not satisfy or excuse Plaintiffs' burden of pleading Diller, in the absence of any voting power at Old Match, still exercised actual control over it.

Plaintiffs fall short of that burden. Plaintiffs make one allegation bearing on Diller's actual control of Old Match: that "[Old] IAC and Diller" used Old IAC's voting power in Old Match to pack Old Match's board with five IAC officers and directors (Levin, Schiffman, Stein, Winiarski, and Spoon), two alleged Diller loyalists (Seymon and McDaniel), and one of Diller's longstanding business associates (McInerney). This allegation falls short of demonstrating actual control.

First, the allegation that Old IAC "and Diller" used Old IAC's voting power is conclusory as to Diller. And second, Plaintiffs do not even argue the use of Old IAC's power hands Diller actual control over Old Match. Out of an abundance of plaintiff-friendly caution, I have done the work of extending Plaintiffs' demand futility and *MFW* committee independence arguments to the issue of actual control.[44] Doing so secures for Diller only a minority of Old Match's board. Schiffman, Stein,

---

[44] *See* D.I. 100 at 34–67, 72–74, 94–100. The argument that Diller's ties to Old Match directors contributed to actual control is arguably waived. *Emerald P'rs v. Berlin*, A.2d 1215, 1224 (Del. 1999).

and Winiarski are pled to be aligned with Old IAC, not Diller.[45]  Even if Diller "used [Old] IAC's voting control" to install these directors, the result deepened Old IAC's control over Match, not Diller's.  Plaintiffs fail to plead Seymon and McDaniel are beholden to Diller for the same reasons Seymon and McDaniel lacked independence from Old IAC.[46]  Even assuming Levin, Spoon, and McInerney were beholden to Diller, his ability to influence three individuals on Old Match's ten-member board does not amount to actual control of Old Match.  Plaintiffs have not pled any other means by which Diller's ability to wield Old IAC's voting power afforded Diller himself actual control over Old Match.[47]

Plaintiffs have failed to plead Diller exerted actual control over Old Match, at all or through his inferred actual control of Old IAC.  It follows they cannot plead a

---

[45] Am. Compl. ¶¶ 27, 29, 30, 44; *see also id.* ¶¶ 213–16 (noting Schiffman's "relationship with Diller" only in reference to his employment at Old IAC and an Old IAC subsidiary). Plaintiffs' demand briefing, which frames IAC officers as "work[ing] for Diller and IAC," does not change their pleading that these directors were aligned with Old IAC, not Diller. *See* D.I. 100 at 96 (describing Schiffman as an IAC executive who has "worked for Diller and IAC since . . . 2016").

[46] *Match I*, 2022 WL 3970159, at *20–21.

[47] Indeed, aside from Diller's public commentary on the Separation from Old IAC's standpoint, the Amended Complaint lacks any allegation of Diller's actual involvement in the transaction. *See generally* Am. Compl.  Plaintiffs' claims are headed to trial under entire fairness review because of Old IAC's control of Old Match.

claim that he breached any fiduciary duty to Old Match stockholders. Count I against Diller is dismissed.

### B. Levin, Schiffman, Stein, Winiarski, and Spoon

The Dual Fiduciary Defendants argue any claim against them should be dismissed because the claim is exculpated[48] and the directors abstained from the Separation.

Where a corporate charter contains an exculpatory provision, claims against a director will survive a motion to dismiss if the plaintiff pleads that the director (1) "harbored self-interest adverse to the stockholders' interests"; (2) "acted to advance the self-interest of an interested party from whom they could not be presumed to act independently"; or (3) "acted in bad faith."[49] Relevant here, a plaintiff may plead interestedness by pleading the director "was a dual fiduciary and owed a competing duty of loyalty to an entity that itself stood on the other side of the transaction or received a unique benefit not shared with the stockholders."[50]

---

[48] *See* D.I. 91, Ex. 21 at Art. IX; 8 *Del. C.* § 102(b)(7).

[49] *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1179–80 (Del. 2015).

[50] *Frederick Hsu Living Tr. v. ODN Hldg. Corp.*, 2017 WL 1437308, at *26 (Del. Ch. Apr. 14, 2017); *In re Pattern Energy Gp., Inc. S'holders Litig.*, 2021 WL 1812674, at *66 (Del. Ch. May 6, 2021).

Plaintiffs allege the Dual Fiduciary Defendants were all dual fiduciaries of Old Match and Old IAC when they voted to approve the Separation. They each held director or officer roles at both corporations. Under Delaware law, there is "no dilution of the duty of loyalty when a director holds dual or multiple fiduciary obligations and no safe harbor for such divided loyalties."[51] "If the interests of the beneficiaries to whom the dual fiduciary owes duties diverge, the fiduciary faces an inherent conflict of interest."[52] The Dual Fiduciary Defendants each face such a conflict, so the claims against them are not exculpated.

Levin, Schiffman, Stein, and Winiarski also argue they "delegated responsibility for evaluating and negotiating the Separation to the Separation Committee, and allowed the Separation Committee to determine whether Match would proceed."[53] It is true that dual fiduciaries "can avoid liability for an interested transaction by totally abstaining from any participation in the transaction."[54] But at

---

[51] *Chen v. Howard-Anderson*, 87 A.3d 648, 670 (Del. Ch. 2014) (internal quotation marks omitted) (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983)).

[52] *Id.* *Chen* notes there is no conflict if the interests of the beneficiaries are aligned. *Id.* That caveat is inapplicable here, where Plaintiffs have adequately pled the transaction was unfair to the Old Match minority. *Match II*, 315 A.3d at 470 n.159.

[53] D.I. 91 at 60.

[54] *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *15 (Del. Ch. Mar. 15, 2019).

a minimum, abstention requires abstaining from the vote approving that transaction.[55] Each Dual Fiduciary Defendant voted to approve the Separation.[56] At this stage, it is reasonably conceivable that each participated in the Separation by voting to approve it while laboring under the inherent conflict of being a dual fiduciary. Plaintiffs have stated a claim against the Dual Fiduciary Defendants.

## III. CONCLUSION

The Moving Defendants' motion to dismiss is GRANTED as to Diller and DENIED as to the Dual Fiduciary Defendants. **IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[55] *See In re Carvana Co. S'holders Litig.*, 2022 WL 2352457, at *16 n.115 (Del. Ch. June 30, 2022) (reasoning "'abstention' connotes withdrawing from the final decision" based on Black's Law Dictionary's definition of "abstention" as "[t]he act of not voting for or against something" (quoting Black's Law Dictionary (11th ed. 2019))); *see also Voigt v. Metcalf*, 2020 WL 614999, at *27 (Del. Ch. Feb. 10, 2020) (describing scenarios that would preclude an abstention defense even where the director abstained from a formal vote); *Valeant Pharms. Int'l v. Jerney*, 921 A.2d 732, 753 (Del. Ch. 2007) ("Generally speaking, a director who does not attend or participate in the board's deliberations or approval of a proposal will not be held liable. This is not an invariable rule and the result may differ where the absent director plays a role in the negotiation, structuring, or approval of the proposal.").

[56] *See* D.I. 91, Ex. 1 at 152 (noting the Old Match board approved the Separation "by unanimous vote of all directors present," while referencing only one absent director, Sharmistha Dubey). Plaintiffs also allege Levin and Schiffman participated in planning the transaction.

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*