Button v. Level Four Orthotics & Prosthetics, Inc., 2020 NCBC 18.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| FORSYTH COUNTY | 19 CVS 3246 |

JAMES C. BUTTON,

       Plaintiff,

   v.

LEVEL FOUR ORTHOTICS &
PROSTHETICS, INC.; LEVEL FOUR
SBIC HOLDINGS, LLC; PENTA
MEZZANINE SBIC FUND I, L.P.;
REBECCA R. IRISH; and SETH D.
ELLIS,

       Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO
DISMISS**

1.    **THIS MATTER** is before the Court on Defendants Level Four Orthotics &

Prosthetics, Inc., Level Four SBIC Holdings, LLC, Penta Mezzanine SBIC Fund I,

L.P., Rebecca R. Irish, and Seth D. Ellis' (collectively referred to herein as

"Defendants") Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of

the North Carolina Rules of Civil Procedure (the "Rule(s)") filed on August 9, 2019

(the "Motion"). (ECF No. 17.)

2.    For the reasons set forth herein, the Court **GRANTS in part** and **DENIES**

**in part** the Motion.

>*Mullins Duncan Harrell & Russell, PLLC by Alan W. Duncan, Stephen
>M. Russell, and Tyler Nullmeyer, for Plaintiff.*
>
>*Robinson, Bradshaw & Hinson, P.A. by David C. Wright and Brian L.
>Church, for Defendants.*

Robinson, Judge.

# I. INTRODUCTION

3.     This action arises out of Plaintiff James C. Button's ("Plaintiff" or "Mr. Button") employment with Defendant Level Four Orthotics & Prosthetics, Inc. ("Level Four Inc."). Plaintiff was employed as Level Four Inc.'s Chief Executive Officer ("CEO") until his employment was terminated on March 20, 2019. Plaintiff alleges that Defendants terminated Plaintiff's employment in an attempt to diminish Plaintiff's ownership rights in Level Four Inc. acquired in connection with his employment and in violation of his employment agreement with Level Four Inc.

# II. FACTUAL BACKGROUND

4.     The Court does not make findings of fact for the purposes of a motion to dismiss, but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.[1]

## A. The Parties

5.     Plaintiff is a citizen and resident of Morris County, New Jersey. (Compl. ¶ 1.)

6.     Level Four Inc. is a North Carolina corporation with its principal place of business in Winston-Salem, North Carolina. (Compl. ¶ 2.)

7.     Defendant Level Four SBIC Holdings, LLC ("Level Four Holdings") is a Florida corporation with its principal place of business in Winter Park, Florida.

---

[1] "Absent a request by one of the parties, the trial court is not required to make findings of fact when ruling on a motion." *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986). The appellate courts will presume that the trial court found sufficient facts to support its ruling. *Id.*

(Compl. ¶ 3.)  Plaintiff alleges that Level Four Holdings owns a majority interest in Level Four Inc.  (Compl. ¶ 3.)

8.    Defendant Penta Mezzanine SBIC Fund I, L.P. ("Penta Fund") is a limited partnership existing under the laws of Delaware with its principal place of business in Winter Park, Florida.  (Compl. ¶ 4.)  Plaintiff alleges that Penta Fund is a manager and majority interest owner of Level Four Holdings.  (Compl. ¶ 4.)  Plaintiff further alleges that Penta Fund owns a minority interest in Level Four Inc.   (Compl. ¶ 4.)

9.    Defendant Rebecca R. Irish ("Ms. Irish") is a citizen and resident of Orange County, Florida.  (Compl. ¶ 6.)  Ms. Irish is a managing partner and investment committee member of Penta Fund.  (Compl. ¶ 6.)  Ms. Irish also acts as the sole director and current CEO of Level Four Inc. and as the manager of Level Four Holdings.  (Compl. ¶ 6.)  Plaintiff also alleges that Mrs. Irish "owns a significant interest in Penta Fund."  (Compl. ¶ 6.)

10.    Defendant Seth D. Ellis ("Mr. Ellis") is a citizen and resident of Lake County, Florida.  (Compl. ¶ 7.)  Mr. Ellis is a managing partner and investment committee member of Penta Fund.  (Compl. ¶ 7.)  Plaintiff alleges that Mr. Ellis also "owns a significant interest in Penta Fund."  (Compl. ¶ 7.)

**B.    Terms and Negotiation of Plaintiff's Employment Agreement**

11.    Plaintiff entered into an employment agreement with Level Four Inc. on or about July 14, 2017 (the "Employment Agreement"), pursuant to which Plaintiff was to act as the CEO of Level Four Inc. for a period of five years.  (Compl. ¶ 10; *see also*

Compl. Ex. 1, ECF No. 3 [the "Employment Agreement"].) Plaintiff was employed as Level Four Inc.'s CEO from July 14, 2017 until March 20, 2019. (Compl. ¶ 1.)

12. In connection with his employment, Plaintiff signed five agreements in addition to the Employment Agreement. (*See* Compl. ¶ 11.) Plaintiff entered into the Warrant Agreement with Level Four Inc. and entered into the Option Agreement, Stock Repurchase Agreement, Go Shop Provision with Future Sale Agreement (the "Go Shop Agreement"), and Shareholder Voting Agreement with Level Four Holdings (the Option Agreement, Stock Repurchase Agreement, and Go Shop Agreement are collectively referred to herein as the "Level Four Holdings Agreements"). (Compl. ¶ 11.a., b., c., d., e.; *see also* Compl. Ex. 2, Ex. 3 [the "Option Agreement"], Ex. 4 [the "Stock Repurchase Agreement"], Ex. 5 [the "Go Shop Agreement"], Ex. 6, ECF No. 3.)

13. Plaintiff negotiated the terms of his employment with Level Four Inc. with Ms. Irish and Mr. Ellis. (Compl. ¶ 13.) Plaintiff alleges that during these negotiations Ms. Irish and Mr. Ellis were simultaneously representing Level Four Inc., Level Four Holdings, and Penta Fund. (Compl. ¶ 13.)

14. At the time Plaintiff was negotiating his employment with Level Four Inc., Level Four Inc. owed Penta Fund $9,967,413 in long-term debt bearing various interest rates up to 18% per annum. (Compl. ¶¶ 17, 19.) Plaintiff believed this debt to be an ongoing challenge to Level Four Inc., which significantly diminished its value to its shareholders. (Compl. ¶ 20.) As a part of Plaintiff's employment negotiations, Plaintiff requested that Penta Fund reduce the interest rate on the debt owed by Level Four Inc. (Compl. ¶ 21.) The parties ultimately agreed on an interest rate of

two and one-half percent (2.5%) as evidenced by paragraph 21 of the Employment Agreement. (Compl. ¶¶ 23–24; Employment Agreement ¶ 21.)

15. Paragraph 21 of the Employment Agreements provides that Level Four Inc. "shall cause the interest rates on the promissory notes payable to [Penta Fund] to be reduced to no greater than the two-and-one-half percent (2.5%) at all times subsequent to July 1, 2016."[2] (Compl. ¶ 23; Employment Agreement ¶ 21.) Plaintiff contends that paragraph 21 of the Employment Agreement was intended to apply to all existing and future debt. (Compl. ¶ 23.)[3]

16. The Employment Agreement also allows Level Four Inc.[4] to terminate Plaintiff's employment for or without cause. (Compl. ¶¶ 32, 35; Employment Agreement ¶ 7.A., 7.B.) In the event that Plaintiff's employment was terminated without cause, Plaintiff was entitled to thirty-day written notice with various severance benefits. (Compl. ¶¶ 32–33; Employment Agreement ¶ 7.B.) However, if Plaintiff's employment was terminated for cause, Plaintiff was not entitled to the thirty-day notice or the severance benefits. (Compl. ¶ 34; Employment Agreement ¶ 7.A.)

---

[2] The Complaint represents that the parties intended for the date in Paragraph 21 of the Employment Agreement to be July 1, 2017; however, a scrivener's error caused the incorrect date of July 1, 2016 to be inserted into the Employment Agreement. (Compl. ¶ 24.)

[3] Defendants contend that paragraph 21 of the Employment Agreement does not apply to future advances made by Penta Fund to Level Four Inc. (Br. Supp. Defs.' Mot. to Dismiss 19–22, ECF No. 18 ["Br. Supp."].) However, the Court need not resolve this dispute amongst the parties for the purposes of this Motion.

[4] The Employment Agreement uses the defined term "Company" throughout, which is defined on page 1 as "Level Four Orthotics & Prosthetics, Inc." (Employment Agreement 1.)

17. Paragraph 7.A. of the Employment Agreements provides that Plaintiff could be terminated "for cause" if Plaintiff engaged in "any willful misconduct or gross negligence which could reasonably be expected to have a material adverse affect (sic) on the business and affairs of [Level Four Inc.]" (Employment Agreement ¶ 7.A.; *see also* Compl. ¶ 35.)

18. Plaintiff's rights under the Warrant Agreement and the Level Four Holdings Agreements are dependent on whether Plaintiff's employment was terminated by Level Four Inc. for cause or without cause pursuant to the terms of the Employment Agreement. (*See* Compl. ¶¶ 42–43, 46–47, 49–50, 52–53; Ex. 2 § 3.1; Option Agreement § 1.1(iii); Stock Repurchase Agreement ¶¶ 1.a., 1.b., 2; Go Shop Agreement ¶ 2.)

19. Pursuant to the terms of the Option Agreement, Plaintiff had a right to purchase 21% of Level Four Holdings' fully diluted common stock and an economic participation interest in Penta Funds' notes, plus accrued interest thereon, due from Level Four Inc. to Penta Fund. (Compl. ¶ 44; Option Agreement 1–2.) In the event that Plaintiff's employment was terminated without cause pursuant to the Employment Agreement, Plaintiff's rights under the Option Agreement would be set to expire July 14, 2022. (Compl. ¶¶ 45, 47.) However, if Plaintiff was terminated for cause or voluntarily resigned pursuant to the Employment Agreement he would no longer be able to exercise his rights pursuant to the Option Agreement. (Compl. ¶ 46; Option Agreement § 1.1(iii).)

20.    The Stock Repurchase Agreement gives Level Four Holdings the option to purchase certain Level Four Inc. stock owned by Plaintiff after Plaintiff's employment with Level Four Inc. ends.  (Compl. ¶ 48.)  Depending on whether Plaintiff's termination is for or without cause, the calculation of the purchase price of the Level Four Inc. stock and Level Four Holdings' ability to purchase stock obtained by Plaintiff pursuant to the Option Agreement varies.  (Compl. ¶¶ 49–50; Stock Repurchase Agreement ¶¶ 1.a., 1.b., 2.)

21.    The Go Shop Agreement gives Plaintiff the right to make a competing offer to purchase Level Four Inc. as a condition of Level Four Holdings agreeing to an offer to sell Level Four Inc. to a third-party.  (Compl. ¶ 51.)  If Plaintiff voluntarily resigned or his employment with Level Four Inc. was terminated for cause, then Plaintiff's repurchase rights terminated immediately.  (Compl. ¶ 52; Go Shop Agreement ¶ 2.) If Plaintiff was terminated without cause, then his rights pursuant to the Go Shop Agreement continued for six months from his termination before expiring.  (Compl. ¶ 53; Go Shop Agreement ¶ 2.)

22.    The Warrant Agreement provided Plaintiff the right to purchase 30% of Level Four Inc.'s common stock, subject to certain vesting requirements.  (Compl. ¶ 37.)

23.    On August 14, 2017, September 15, 2017, October 16, 2017, and March 31, 2018, Plaintiff exercised his rights pursuant to the Warrant Agreement and requested that Ms. Irish provide the certificates for the purchased stock.  (Compl. ¶¶

84, 87, 90, 94.) Neither Level Four Inc. nor Ms. Irish provided the stock certificates to Plaintiff. (Compl. ¶¶ 85, 88, 91, 93, 95.)

24. Plaintiff contends that, after exercising his rights pursuant to the Warrant Agreement, Plaintiff is the legal and equitable owner of 8% of Level Four. Inc.'s common stock. (Compl. ¶ 97.)

**C.** **Termination of Plaintiff's Employment at Level Four Inc.**

25. Plaintiff alleges that during his tenure as Level Four Inc.'s CEO he satisfactorily performed his duties. (Compl. ¶¶ 54–83.) Plaintiff received positive feedback regarding his job performance from multiple Level Four Inc. executives. (Compl. ¶¶ 66–72.) Plaintiff never received a negative performance review. (Compl. ¶ 73.) Plaintiff further alleges that he "did not engage in any willful misconduct or gross negligence which could reasonably be expected to have a material adverse effect on the business and affairs of Level Four Inc." (Compl. ¶ 74.)

26. In November 2018, Plaintiff recommended that Penta Fund loan additional funds to Level Four Inc. to enable Plaintiff, as Level Four Inc.'s CEO, to implement certain business plans. (Compl. ¶ 98.) Ms. Irish notified Plaintiff on December 12, 2018, that as a condition to providing additional funding to Level Four Inc., Penta Fund would require an eight percent (8%) interest rate for both the new funding and all of the then outstanding amounts owed to Penta Fund. (Compl. ¶ 99.)

27. Plaintiff believed this condition and implementation of an 8% interest rate to be a violation of the term of his Employment Agreement requiring a 2.5% interest rate on funds loaned by Penta Fund to Level Four Inc. (Compl. ¶ 100.) Plaintiff

refused to agree to any modification of the interest rate provision in his Employment Agreement. (Compl. ¶ 101.)

28. Notwithstanding Plaintiff's refusal to agree to an 8% interest rate, Penta Fund wired funds to Level Four Inc. on December 12, 2018. (Compl. ¶ 102.) In connection with the wired funds, Ms. Irish and Mr. Ellis demanded that Plaintiff sign a promissory note for the funds bearing an interest rate of 8%. (Compl. ¶¶ 102–07). Months later, on February 21, 2019, a second promissory note for $300,000, also bearing an interest rate of 8%, was presented to Plaintiff to sign on behalf of Level Four Inc. (Compl. ¶¶ 107, 09.)

29. Plaintiff informed Ms. Irish, and other Penta Fund representatives, that the proposed interest rate was a violation of the interest rate provision in his Employment Agreement. (Compl. ¶¶ 103, 112.) Plaintiff refused to sign either promissory note. (Compl. ¶ 111.) Mr. Ellis indicated in a February 21, 2019 conference call that Penta Fund would not tolerate the promissory notes remaining unsigned by Plaintiff. (Compl. ¶ 106.)

30. Plaintiff traveled to North Carolina on March 20, 2019 in order to meet with employees, attend various business meetings, and attend a monthly management meeting. (Compl. ¶¶ 114–15.) That same day, Plaintiff met with Penta Fund's Investment Committee by conference call, during which Ms. Irish informed Plaintiff that his employment with Level Four Inc. was being immediately terminated for cause. (Compl. ¶¶ 116–18.) Ms. Irish also asked Plaintiff if he would prefer to voluntarily resign, but Plaintiff refused to voluntarily resign. (Compl. ¶¶ 124, 126.)

31.    During the conference call, Mr. Ellis further provided that the decision to terminate Plaintiff's employment for cause was a unanimous decision of Penta Fund's Investment Committee. (Compl. ¶ 120.) While Plaintiff has inquired as to the basis for his for-cause termination, Defendants have failed to provide Plaintiff a reason for his termination or otherwise respond to his inquiries regarding the classification of his termination as for cause. (Compl. ¶¶ 119, 124, 127.)

32.    Upon termination of Plaintiff's employment from Level Four Inc., Ms. Irish was appointed as Level Four Inc.'s CEO. (Compl. ¶¶ 6, 137–38.)

33.    Plaintiff alleges that Level Four Inc. lacked any valid basis to terminate Plaintiff's employment for cause consistent with the terms of the Employment Agreement. (Compl. ¶ 128.) Plaintiff further alleges that Defendants acted pursuant to a common scheme: to terminate Plaintiff's employment for cause; to raise the interest rate on the debts owed by Level Four Inc. to Penta Fund; and to appoint Ms. Irish as Level Four Inc.'s CEO. (Compl. ¶¶ 138, 209.)

## III.    PROCEDURAL BACKGROUND

34.    The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

35.    Plaintiff filed his Complaint (the "Complaint") on May 30, 2019. (ECF No. 3.)

36.    This matter was designated as a mandatory complex business case and assigned to the undersigned on May 31, 2019. (ECF Nos. 1–2.)

37.     Defendants filed the Motion and a brief in support thereof on August 9, 2019.  (Br. Supp. Defs.' Mot. to Dismiss, ECF No. 18 ["Br. Supp."])

38.     On August 9, 2019, Defendants filed the Affidavit of Seth D. Ellis.  (Aff. Seth D. Ellis, ECF No. 19 ["Ellis Aff."].)  On September 17, 2019, Plaintiff filed the Affidavit of James C. Button.  (Aff. James C. Button, ECF No. 26 ["Button Aff."].)

39.     The Motion has been fully briefed, and the Court held a hearing on the Motion on October 28, 2019.  (*See* ECF No. 24.)

40.     The Motion is ripe for resolution.

## IV.     ANALYSIS

41.     Defendants move to dismiss some, but not all of, Plaintiff's claims on three grounds: (1) the Court lacks subject matter jurisdiction over the declaratory judgment claim brought against Level Four Holdings pursuant to Rule 12(b)(1); (2) the Court lacks personal jurisdiction over Level Four Holdings and Mr. Ellis pursuant to Rule 12(b)(2); and (3) Plaintiff failed to state a claim for which relief can be granted pursuant to Rule 12(b)(6) as to Plaintiff's claims for tortious interference with contract, breach of fiduciary duty, and civil conspiracy.  The Court addresses each issue in turn.

### A.     Subject Matter Jurisdiction Over Claim for Declaratory Judgment

42.     As Plaintiff's request for declaratory judgment pertains to Level Four Holdings,[5] Plaintiff seeks the following declarations:

---

[5] Plaintiff also asserts a declaratory judgment claim against Level Four Inc., which is not a subject of this Motion and is not affected by the entry of this Order and Opinion.

a. That because [Mr. Button's] termination was "without cause," Mr. Button retains the option rights set forth in the Option Agreement until 14 July 2022.

b. That because [Mr. Button's] termination was "without cause," the price Mr. Button would be owed for the purchase of any warrant stock is calculated according to the formula provided in Paragraph B of the Stock Repurchase Agreement, and that Level Four Holdings has no option to purchase stock that Mr. Button receives by exercise of his own options.

c. That because [Mr. Button's] termination was "without cause," Mr. Button retains a thirty day non-exclusive go shop period pursuant to the Go Shop Agreement, until, and including 19 October 2019.

(Compl. ¶ 195.)

43. Level Four Holdings contends that the Court does not have subject matter jurisdiction over Plaintiff's request for declaratory judgment against Level Four Holdings because there is no actual case or controversy. (Br. Supp. 11–13.)

44. A court shall dismiss the action when it appears that the court lacks subject matter jurisdiction. N.C.G.S. § 1A-1, Rule 12(h)(3). The plaintiff bears the burden of establishing subject matter jurisdiction. *Harper v. City of Asheville*, 160 N.C. App. 209, 217, 585 S.E.2d 240, 245 (2003). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside of the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009) (citing *Tart*, 38 N.C. App. at 502, 248 S.E.2d at 737).

45. "Courts have jurisdiction to render declaratory judgment only when the pleadings and evidence disclose the existence of an actual controversy between the parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316, S.E.2d 59, 61 (1984). "[A]n actual controversy [is] a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act[.]" *Id.* (internal quotation marks omitted); *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986) ("Although the North Carolina Declaratory Judgment Act does not state specifically that an actual controversy between the parties is a jurisdictional prerequisite to an action thereunder, our case law does impose such a requirement."). The "controversy must exist between the parties at the time the pleading requesting declaratory relief [was] filed." *Sharpe*, 317 N.C. at 584, 347 S.E.2d at 29.

46. "[F]uture or anticipated action of a litigant does not give subject matter jurisdiction to our courts under the Declaratory Judgment Act." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 628, 518 S.E.2d 205, 207 (1999). For an actual controversy to exist, the complaint must show "that litigation appears unavoidable." *State ex rel. Utils. Comm'n v. Carolina Water Serv.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002). "Mere apprehension or mere threat of an action or suit is not enough." *Id.*

47. Defendants contend that Plaintiff's claim for declaratory judgment as asserted against Level Four Holdings, is not justiciable for Plaintiff's failure to make

allegations showing a controversy. (Br. Supp. 11–13.) Plaintiff contends that the following controversies with Level Four Holdings exist:

a. Whether under the Option Agreement with Level Four Holdings, Mr. Button has the rights that result from a "without cause" termination of his employment with Level Four Inc.;

b. Whether under the Stock Repurchase Agreement with Level Four Holdings, Mr. Button has the rights that result from a "without case" termination of his employment with Level Four Inc.;

c. Whether under the Go Shop Agreement with Level Four Holdings, Mr. Button has the rights that result from a "without cause" termination of his employment with Level Four. Inc.

(Compl. ¶ 194.) The controversies alleged by Plaintiff all stem from whether Plaintiff's employment with Level Four Inc. was terminated for cause or without cause. (*See* Compl. ¶ 194.)

48. North Carolina's appellate courts have dealt with similar factual scenarios in defining "actual controversy" for the purposes of the Declaratory Judgment Act. *See Sharpe*, 317 N.C. at 584–90, 347 S.E.2d at 29–32; *Calton v. Calton*, 118 N.C. App. 439, 441–43, 456 S.E.2d 520, 521–23 (1995).

49. In *Sharpe*, a corporation sold its assets to the defendant and, as partial payment for those assets, the defendant issued promissory notes to the corporation, which were then distributed to its shareholders. *Sharpe*, 317 N.C. at 580, 347 S.E.2d at 27. Each of the promissory notes limited the payment due to the shareholder in the event that the shareholder competed with the defendant for a certain period of time. *Id.* at 580–81, 347 S.E.2d at 27. The shareholder plaintiffs sought a declaratory

judgment to determine the validity of the competition provisions in the promissory note. *Id.* at 580, 347 S.E.2d at 27. Reasoning that (1) the competition provisions had not been enforced against the plaintiffs; (2) there was no "practical certainty" that the plaintiffs would compete with the defendant in violation of the promissory notes; and (3) whether the plaintiffs would engage in such competitive activity depended on a variety of factors, including the plaintiffs' financial ability, the Supreme Court of North Carolina determined that it lacked subject matter jurisdiction because the plaintiffs failed to show an actual controversy. *Id.* at 589–90, 347 S.E.2d at 32.

50. The North Carolina Court of Appeals in *Calton*, relying in part on *Sharpe*, later dismissed a plaintiffs' request for declaratory judgment for failure to state a controversy when the plaintiff stockholders attempted to determine their rights to purchase stock. *Calton*, 118 N.C. App. at 441–43, 456 S.E.2d at 522–23. The decedent W. C. Calton devised stock in North Carolina Equipment Company to two trusts. *Id.* at 440, 456 S.E.2d at 521. The company's charter provided that, in the event that another stockholder passed away, the company and remaining stockholders had an option to purchase the deceased stockholder's stock. *Id.* Notwithstanding the company's charter, the executors to the trusts delivered the stock to the trustees of the two trusts. *Id.* The plaintiff stockholders sought a declaratory judgment determining their rights to purchase the shares distributed to the trustees pursuant to the company charter. *Id.* at 440–41, 456 S.E.2d at 521–22.

51. In *Calton*, the Court of Appeals declined to grant the plaintiffs' request for failure to show an actual controversy and ultimately concluded that the issue before

the court was "merely an abstract or theoretical question." *Id.* at 443, 456 S.E.2d at 523. The court specifically stated that the "[p]laintiffs neither alleged nor presented any evidence to show that any shareholder exercised his right to purchase the stock, intended to exercise his right to purchase the stock, or was even financially able to do so at the time this action was filed." *Id.*

52. As in *Sharpe* and *Calton*, Plaintiff does not allege that Plaintiff has made an attempt to assert his rights under the various Level Four Holdings Agreements or even that Plaintiff intends to assert his rights under any of those agreements. *See Sharpe*, 317 N.C. at 589, 347 S.E.2d at 32; *Calton*, 118 N.C. App. at 443, 456 S.E.2d at 523. Plaintiff also does not present any evidence or make factual allegations that tends to show that Plaintiff has the ability to assert his rights under the Level Four Holdings Agreements, Level Four Holdings has attempted to assert its purchase rights pursuant to the Stock Repurchase Agreement, Level Four Holdings intends to sell Level Four Inc. to a third-party to trigger Plaintiff's rights pursuant to the Go Shop Agreement, or that Level Four Holdings will in fact breach those agreements. Plaintiff's argument, at bottom, is that Level Four Holdings may breach the Level Four Holdings Agreements at some point in the future, which is insufficient to show an actual controversy. *See Kirkman v. Kirkman*, 42 N.C. App. 173, 177–78, 256 S.E.2d 264, 267 (1979) (dismissing a request for declaratory judgment premised on "the mere allegation that [the plaintiffs] anticipate that the obligor will breach the contract at some time in the future" because there was no "assurance that the contract will be breached").

53.     Furthermore, Plaintiff's rights under the Level Four Holdings Agreements are dependent on the classification of Plaintiff's termination from Level Four Inc. as for or without cause. (*See* Compl. ¶¶ 44–53, 130; Option Agreement § 1.1(iii); Stock Repurchase Agreement ¶¶ 1.a., 1.b.; Go Shop Agreement ¶ 2.) However, the classification of Plaintiff's termination was a decision for Level Four Inc. to make. The express terms of the Employment Agreement give Level Four Inc., not Level Four Holdings, the ability to terminate Plaintiff's employment for or without cause. (Employment Agreement ¶ 7.) As alleged, any controversy for the Court to resolve pursuant to the Declaratory Judgment Act exists between Level Four Inc. and Plaintiff, not Plaintiff and Level Four Holdings. This is further illustrated by the fact that Plaintiff asserts a tortious interference with contract claim against Level Four Holdings for its alleged inducement of Level Four Inc. to classify Plaintiff's termination as for cause in violation of the Employment Agreement. (*See* Compl. ¶¶ 198–203.)

54.     It appears that Plaintiff seeks an opinion of the Court to determine whether he should attempt to enforce any rights under the Level Four Holdings Agreements at some point in the future, without making factual allegations demonstrating any reasonable certainty that Plaintiff will attempt to enforce his rights pursuant to the Level Four Holdings Agreements. *See Slaughter v. Winner Enters. of Carolina Beach, LLC*, 2019 NCBC LEXIS 1, at *31–32 (N.C. Super. Ct. Jan. 7, 2019) (dismissing the plaintiff's request for a declaratory judgment, where it appeared the plaintiff was seeking an opinion of the court declaring whether the plaintiff may successfully bring

a later cause of action against one of the defendants).  The Court declines to render an advisory opinion for Plaintiff to "put on ice to be used if and when occasion might arise."  *See Tryon v. Duke Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942).

55.    Based on the foregoing analysis, the Court concludes that Plaintiff fails to allege an actual controversy with Level Four Holdings, and where the "pleadings do not contain allegations of a real and existing controversy, a claim for declaratory judgment must be dismissed.  *Raja v. Patel*, 2017 NCBC LEXIS 25, at *18 (N.C. Super. Ct. Mar. 23, 2017) (citations omitted).  Therefore, Plaintiff's claim for declaratory judgment as to Level Four Holdings should be DISMISSED without prejudice.[6]

## B.    Personal Jurisdiction

56.    Next, Defendants Level Four Holdings and Mr. Ellis contend that the Court lacks personal jurisdiction over them.  (Br. Supp. 7–11.)

57.    Upon a motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), "the plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant. . . [and] making out a *prima facie* case that jurisdiction exists."  *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010) (citation omitted).  "To determine whether personal jurisdiction over a defendant exists, the Court conducts a two-step analysis: first, personal jurisdiction must exist under the North Carolina

---

[6] "A dismissal for lack of [subject matter] jurisdiction is generally a dismissal without prejudice."  *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs*, 2016 NCBC LEXIS 33, at *27 fn. 8 (N.C. Super. Ct. Apr. 16, 2016).

long-arm statute; second, the exercise of personal jurisdiction must not violate the due process clause of the Fourth Amendment of the United States Constitution." *Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 17, at \*10–11 (N.C. Super. Ct. Mar. 6, 2017).  "However, because North Carolina's long-arm statute has been interpreted to allow the exercise of personal jurisdiction to the fullest extent allowed under the due process clause, the two-step analysis collapses into one." *Worley v. Moore*, 2017 NCBC LEXIS 15, at \*19 (N.C. Super. Ct. Feb. 28, 2017) (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977); *Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 633, 652 S.E.2d 389, 391 (2007)).

58.     When both the plaintiff and the defendant submit affidavits in support of their respective provisions, the Court may decide whether personal jurisdiction exists from a review of the affidavits.  *Bauer*, 207 N.C. App. at 68, 698 S.E.2d at 761. Unverified allegations in a complaint that conflict with an affidavit submitted by the defendant may no longer be taken as true.  *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).  When competing affidavits conflict, "the trial court must determine the weight and sufficiency of the evidence in making its findings of fact."  *Weisman v. Blue Mountain Organic Distrib., LLC*, 2014 NCBC LEXIS 41, at \*2 (N.C. Super. Ct. Sept. 5, 2014) (citation and internal quotation marks omitted).

59.     To exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The defendant must purposefully avail himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of the forum state's laws." *Worley*, 2017 NCBC LEXIS 15, at \*20 (citing *Tom Togs., Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986)).

60. In determining whether a defendant has sufficient minimum contacts with the forum state, North Carolina courts consider "(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) the convenience to the parties." *Banc of Am. Sec. LLC*, 169 N.C. App. at 696, 611 S.E.2d at 184.

61. "There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction." *Worley*, 2017 NCBC LEXIS 15, at \*21. "General jurisdiction exists when the defendant has continuous and systematic contacts with the forum state, even though those contacts may be unrelated to the cause of action." *Id.* (citing *Stetser v. TAP Pharm. Prods. Inc.*, 162 N.C. App. 518, 521, 591 S.E.2d 572, 575 (2004)). Plaintiff concedes that if personal jurisdiction over Level Four Holdings or Mr. Ellis exists, the Court may only exercise specific jurisdiction, not general jurisdiction.

62. "A court may exercise specific jurisdiction only where the controversy arises out of the defendant's contacts with the forum state." *Stetser*, 162 N.C. App. at 521, 591 S.E.2d at 575 (quoting *Toms Togs, Inc.*, 318 N.C. at 366, 348 S.E. 2d at 786) (internal quotation marks omitted). "Specific jurisdiction exists when a defendant

purposefully directed his activities toward the forum and the cause of action arises out of or relates to such activities[,]" so that the defendant can reasonably anticipate being sued in the forum state. *Islet Scis., Inc.*, 2017 NCBC LEXIS 17, at *12.

63. "Each defendant's contacts with the forum State must be assessed individually." *Brown*, 186 N.C. App. at 638, 652 S.E.2d at 394 (2007) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Determinations as to whether the Court can properly exercise personal jurisdiction over a defendant is not governed by *per se* rules but depends on the particular facts of each case. *United Buying Grp., Inc. v. Coleman*, 296 N.C. 510, 518, 251 S.E.2d 610, 615 (1979).

### 1. Level Four SBIC Holdings, LLC

64. Level Four Holdings contends that the Court may not properly exercise personal jurisdiction over it. (Br. Supp. 8–11; Reply Br. Supp. Defs.' Mot. Dismiss 4–5, ECF No. 30 ["Reply Br."].) As noted previously, Level Four Holdings is a Florida corporation with its principal place of business located in Winter Park, Florida. (Compl. ¶ 3.)

65. Plaintiff contends that the Court may exercise personal jurisdiction over Level Four Holdings because the entity consented to jurisdiction in North Carolina courts in the Level Four Holdings Agreements. (Resp. Br. Opp'n Defs.' Mot. Dismiss 6–7, ECF No. 25 ["Resp. Br."].) "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Curvature, Inc. v. Cantel Comput. Servs.*, 2019 NCBC LEXIS 48, at *7–8 (N.C. Super. Ct. Aug. 13, 2019) (citing *Ins. Corp. Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982)). When a

defendant has consented to the jurisdiction of this State, the Court need not conduct an inquiry as to whether the defendant maintained sufficient minimum contacts with the state. *See Montgomery v. Montgomery*, 110 N.C. App. 234, 237, 429 S.E.2d 438, 440 (1993).

66. The Level Four Holdings Agreements contain the following consent to jurisdiction provisions:

      a.     <u>Venue and Jurisdiction.</u> The parties hereby consent to jurisdiction and to venue in federal and state courts in the jurisdiction where the Corporation's principal office is located, with respect to any dispute pertaining to the subject matter of this Agreement. By execution hereof, the Parties hereby waive any objection or right to object to jurisdiction and venue therein, and shall not assert any defense based on lack of jurisdiction or venue or forum non conveniens. Any judicial proceeding brought by any party with respect to the subject matter of this Agreement must be brought in the appropriate court of competent jurisdiction where the Corporation's principal office is located. By execution and delivery of this Agreement, the parties generally and unconditionally accept the nonexclusive jurisdiction of the aforesaid courts with respect to any such referenced proceeding, and irrevocably agree to be bound by any judgment rendered therein in connection with this Agreement., (Option Agreement § 4.8(b));

      b.     <u>Applicable Law and Venue.</u> This document shall, in all respects be governed by the laws of the State of North Carolina. Venue of any action brought hereunder shall lie in the state and federal courts located in the county where the Corporation's principal office is located, and the parties agree to submit to the jurisdiction of such courts., (Stock Repurchase Agreement ¶ 6.6);

      c.     <u>Applicable Law, Venue and Severability.</u> This document shall, in all respects, be governed by the laws of the State of North Carolina. Venue of any action brought hereunder shall lie in the courts located in the jurisdiction where the

Corporation's principal office is located, and the parties agree to submit to the jurisdiction of such courts., (Go Shop Agreement ¶ 12).

67. In each of the Level Four Holdings Agreements, "Corporation" is defined as Level Four Inc., which has its principal office in North Carolina. (*See* Option Agreement 1; Stock Repurchase Agreement 1; Go Shop Agreement 1; *see also* Compl. ¶ 2.) By the express language of the Level Four Holdings Agreements, Level Four Holdings and Plaintiff only consent to the jurisdiction of North Carolina courts for causes of action that are brought pursuant to or pertain to the subject matter of the respective agreements. (*See* Option Agreement § 4.8(b); Stock Repurchase Agreement ¶ 6.6; Go Shop Agreement ¶ 12.)

68. The Court has already determined that it lacks subject matter jurisdiction over Plaintiff's request for a declaratory judgment to establish his rights pursuant to the Level Four Holdings Agreements. Therefore, the interpretation and enforcement of the Level Four Holdings Agreements are no longer directly at issue in this litigation and the consent to jurisdiction provisions therein do not automatically permit the Court to exercise personal jurisdiction over Level Four Holdings. *See Hickox v. R & G Grp. Int'l*, 161 N.C. App. 510, 513–14, 588 S.E.2d 566, 569 (2003) (concluding that a forum selection clause did not apply when the plain language of the contract limited its application to certain causes of action); *see also Elliot v. KB Home N.C., Inc.*, 2012 NCBC LEXIS 57, at *11 (N.C. Super Ct. Nov. 2, 2012) ("[T]he court must apply accepted principles of contract interpretation by construing the contract as a whole and giving effect to the plain and unambiguous language in the contract.").

69.     Even though the interpretation and enforcement of the Level Four Holdings Agreements are not directly at issue in this litigation, the fact that Level Four Holdings consented to jurisdiction, selected North Carolina as a forum, and preferred North Carolina law for some causes of action is a factor to consider in determining whether there are sufficient minimum contacts between Level Four Holdings and the forum. *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2015 NCBC LEXIS 7, at *14–15 (N.C. Super. Ct. Jan. 21, 2015) (providing that a choice of law provision in an entity's operating agreement not subject to the litigation, that was signed by the defendant, was indicative of the defendant's willingness to submit to the Court's jurisdiction in matters relating to the entity).

70.     Additionally, "a single contract can provide the basis for the exercise of jurisdiction over a nonresident defendant[.]" *Modern Globe, Inc. v. Spellman*, 45 N.C. App. 618, 624, 263 S.E.2d 859, 863 (1980). "Personal jurisdiction based on a contractual relationship can be exercised consistently with due process where the contract has a substantial connection with the forum state." *Tubular Textile Mach. v. Formosa Dyeing & Finishing*, 1997 U.S. Dist. LEXIS 3061, at *11 (M.D.N.C. 1997) (determining that exercising personal jurisdiction over the defendant was proper when the defendant agreed to terms in an agreement that showed the defendant's intention to enter a relationship that would require continuing interaction and contact with a North Carolina entity).

71.     During Plaintiff's employment negotiations, Ms. Irish simultaneously represented Level Four Inc., Level Four Holdings, and Penta Fund. (Compl. ¶ 13.)

Further, at the relevant times, Ms. Irish simultaneously acted as the sole director of Level Four Inc., a manager of Level Four Holdings, and a managing partner and investment committee member of Penta Fund. (Compl. ¶ 143.) During Plaintiff's interactions with Ms. Irish, she never differentiated the entity she was representing. (Compl. ¶ 145.) Ms. Irish was actively involved in the management of Level Four Inc. and the termination of Plaintiff's employment. (Compl. ¶¶ 114–36, 144.) At the time Plaintiff was hired, nearly all of Level Four Inc.'s "corporate central functions" were located in North Carolina. (Button Aff. ¶ 4.) Plaintiff worked extensively in North Carolina as Level Four Inc.'s CEO and regularly conducted business in its North Carolina office. (Button Aff. ¶ 4.)

72. The factual allegations tend to show that Level Four Holdings contemplated continuing obligations with Plaintiff and Level Four Inc., Plaintiff regularly performed work pertaining to the Employment Agreement in North Carolina, and the Employment Agreement and the Level Four Holdings Agreements have a substantial connection with North Carolina. These facts support a conclusion that the Court may properly exercise personal jurisdiction over Level Four Holdings. *See Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 571, 12 S.E.2d 696, 702 (2011) (concluding the defendant had sufficient contacts with the forum where his employment was closely related to the operations of the company's headquarters in North Carolina and contemplated continuing obligations in North Carolina).

73. In addition to Level Four Holdings' contractual relationship with Plaintiff, Level Four Holdings through Ms. Irish took actions in or directly affecting a North

Carolina entity that go to the subject matter of this litigation, including: negotiating Plaintiff's employment as CEO of Level Four Inc.; negotiating the reduced interest rate on debt owed by Level Four Inc.; terminating Plaintiff's employment with Level Four Inc.; and increasing the interest rate on debt owed by Level Four Inc. to Penta Fund. (Compl. ¶¶ 13, 21–24, 99–100, 114–24, 140, 143, 148). The aforementioned conduct further supports the conclusion that the Court may properly exercise personal jurisdiction over Level Four Holdings. *See, e.g., Islet Scis., Inc., LLC*, 2017 NCBC LEXIS 17, at *16–17 (concluding the Court could properly exercise jurisdiction over a defendant when he interfered with a contract involving a North Carolina entity, the injury was felt in North Carolina, and the defendant took actions that required communication to and actions to take place in North Carolina related to the tortious interference with the contract).

74. For the foregoing reasons, the Court concludes that Plaintiff's allegations regarding Level Four Holdings' contractual relationship with Plaintiff and its actions directed at North Carolina establish sufficient Level Four Holdings contacts with the forum. Therefore, Defendant Level Four Holdings' Motion to Dismiss claims brought against it for lack of personal jurisdiction should be DENIED.

### 2. Seth D. Ellis

75. Defendant Mr. Ellis also contends that the Court may not properly exercise personal jurisdiction over him. (Br. Supp. 8–10.) As previously stated, Mr. Ellis is a citizen and resident of Lake County, Florida and is a managing partner and

investment committee member for Penta Fund, a Florida corporation. (Compl. ¶¶ 4, 7; Ellis Aff. ¶¶ 1, 5.)

76. Mr. Ellis contends that Plaintiff has failed to sufficiently show that Mr. Ellis has ever resided in North Carolina or been physically present in North Carolina at any time relevant to the subject matter of this litigation. (Br. Supp. 8–10)

77. "Lack of action by [a] defendant *in* a jurisdiction is not now fatal to the exercise of long-arm jurisdiction." *Tom Togs, Inc.*, 318 N.C. at 368, 348 S.E.2d at 787 (emphasis in original); *see also Century Data Sys., Inc. v. McDonald*, 109 N.C. App. 425, 433, 428 S.E.2d 190, 194 (1993) ("In light of modern business practices, the quantity, or even the absence of actual physical contacts with the forum state merely constitutes a factor to be considered and is not controlling weight.") (citation and emphasis omitted).

78. Plaintiff alleges numerous contacts Mr. Ellis purposefully directed toward North Carolina including: (1) negotiating the terms of Plaintiff's employment with Level Four Inc., a North Carolina entity; (2) negotiating the interest-rate provision in Plaintiff's Employment Agreement; (3) discussing the performance of Level Four Inc. with Mr. Button on at least fifteen (15) occasions by telephone or e-mail; (4) informing Plaintiff that the termination of his employment was a unanimous decision of Penta Fund; and (5) increasing the interest rate on the debt owed by Level Four Inc. to Penta Fund. (Compl. ¶¶ 2, 13, 21, 105–06, 120; Button Aff. 5–11.) Mr. Ellis' contacts illustrate his participation and partial control of Level Four Inc. and establishes that Mr. Ellis purposefully availed himself of the benefits of the forum.

As a result, the Court concludes that it may properly exercise personal jurisdiction over Mr. Ellis. *See Insight Health Corp.*, 2015 NCBC LEXIS 7, at *13–15 (considering the defendant's participation and control over a North Carolina entity in determining that it could properly exercise personal jurisdiction over the defendant).

79. Mr. Ellis also contends that his contacts with the forum are not closely related to the subject matter of the litigation. (Reply. Br. 2–4.) However, and not withstanding this argument, the Court believes that it should not narrowly examine the relatedness of the defendant's contacts with the forum and the claims asserted against him. *Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC*, 2020 N.C. LEXIS 89, at *18–19 (N.C. 2020). Mr. Ellis' contacts with the forum go directly to Plaintiff's management of Level Four Inc. and the termination of his employment, which is the core of the subject matter of this litigation. *See id.*

80. Therefore, Defendants' Motion to Dismiss for lack of personal jurisdiction over Mr. Ellis should be DENIED.

C. **Rule 12(b)(6)**

81. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Complaint in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court accepts all well-pleaded factual allegations in the relevant

pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

82. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC.*, 251 N.C. App. 198, 206, 794 S.E.2d 898, 903 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (citation omitted). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citation omitted). Where the Court considers documents that are not specifically referred to, contained in, or attached to the Complaint, the Rule 12(b)(6) motion will be converted into a Rule 56 motion and subject to its standards of consideration and review. *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890−91 (1979).[7]

83. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no

[7] For the purposes of Rule 12(b)(6), the Court is limited to its review of the relevant pleading, the Complaint, and any documents referred to in the Complaint. *Moch*, 251 N.C. App. at 206 S.E.2d at 903 (2016) (citation omitted). While the Court may consider matters outside of the Complaint in determining whether it may exercise personal or subject matter jurisdiction

law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615, 821 S.E.2d at 737 n.7 (citations omitted).

### 1. Tortious Interference with Contract

84. Plaintiff alleges that Penta Fund, Ms. Irish, Mr. Ellis, and Level Four Holdings tortiously interfered with the Employment Agreement by causing Level Four Inc. to terminate Plaintiff's employment for cause. (Compl. ¶¶ 199–200.)

85. To state a claim for tortious interference with contract, the pleading must allege that:

> (1) a valid contract [exists] between the [claimant] and a third person which confers upon the [claimant] a contractual right against a third person; (2) the [opposing party] knows of the contract; (3) the [opposing party] intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; [and] (5) resulting in actual damage to [claimant].

---

over the parties or the claims, the Court limits its review for the purposes of Rule 12(b)(6), only considering matters of record that are appropriate in deciding a motion to dismiss brought pursuant to Rule 12(b)(6). *See Estate of Belk v. Boise Cascade Wood Prods., L.L.C.*, 824 S.E.2d 180, 183 (N.C. Ct. App. 2019) ("[T]he trial court is not required to convert a motion to dismiss into one for summary judgment simply because additional documents are submitted. . . Where it is clear from the record, namely from the order itself, that the additional materials were not considered by the trial court, the 12(b)(6) motion is not converted into a Rule 56 motion." (internal quotation marks, brackets, and citation omitted).)

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). "The pleading standards for a tortious interference with contract claim are strict." *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).

86. Defendants contend that the Complaint identifies the Defendants as non-outsiders to the Employment Agreement; therefore, any interference by Defendants was justified. (Br. Supp. 14–16.) "A non-outsider is one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." *Plasman v. Decca Furniture (USA) Inc.*, 2016 NCBC LEXIS 80, at *42 (N.C. Super Ct. Oct. 21, 2016) (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976)). Non-outsiders include officers, directors, shareholders, and other corporate fiduciaries. *Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *21 (N.C. Super. Ct. Apr. 30, 2012) (quoting *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992)).

87. Generally, "non-outsiders often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992). However, a non-outsider may forfeit the privilege of immunity if the non-outsider acted with malice. *Varner v. Bryan*, 113 N.C. App. 697, 701–02, 440 S.E.2d 295, 298 (1994). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties."

*Plasman*, 2016 NCBC LEXIS 80, at \*42 (quoting *Varner*, 113 N.C. App. at 702, 440 S.E.2d at 298).

88.     Generally, "the intent of the parties is a question for the jury[.]" *Stec*, 2012 NCBC LEXIS 24, at \*23.  However, "general allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 833 (2007).  The claimant "must allege facts demonstrating that [the] defendants' actions were not prompted by legitimate business purposes." *Embree Constr. Grp., Inc.*, 330 N.C. at 500, 411 S.E.2d at 926 (internal quotation marks omitted).

89.     Penta Fund and Level Four Holdings are shareholders of Level Four Inc. (Compl. ¶¶ 3–4.)  Ms. Irish, during the times relevant for the Complaint, was the sole director of Level Four Inc.  (Compl. ¶ 6.)  Admittedly based on the allegations in the Complaint, Penta Fund, Level Four Holdings, and Ms. Irish are non-outsiders.  *See Embree Constr. Grp., Inc.*, 330 N.C. at 498, 411 S.E.2d at 924.  As non-outsiders, Penta Fund, Level Four Holdings, and Ms. Irish are entitled to a presumption that they acted in the best interests of the company.  *See Wilson v. McClenny*, 262 N.C. 121, 133–34, 136 S.E.2d 569, 578 (1964) ("The acts of a [non-outsider] in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation.").

90.     In *Stec*, the plaintiff asserted a tortious interference with contract claim against various non-outsiders for termination of his employment agreement with one of the defendants.  *Id.* at \*22.  The plaintiff alleged that his termination violated his

employment agreement in multiple ways, including (1) failing to provide the company with financing as required by his employment agreement; (2) violating the compensation benefits owed to the plaintiff pursuant to the employment agreement; and (3) eliminating the plaintiff's opportunity to earn equity in the company. *Id.* at *5. Similar to this case, the plaintiff alleged that the non-outsider defendants caused his termination for the purposes of eliminating the plaintiff's right under his employment agreement, including the plaintiff's opportunity to earn equity in the company and other compensation and benefits. *Id.* at *5, 23. This Court concluded that the allegations did not rebut the presumption that the non-outsider defendants were acting in the best interests of the company and held that plaintiff's failure to allege that the defendants were acting for their own personal interest was fatal to their claim for tortious interference with contract. *Id.* at *24.

91. As to Penta Fund and Level Four Holdings, Plaintiff fails to make specific factual allegations showing that Penta Fund and Level Four Holdings acted for their own personal interest or that their conduct was otherwise unjustified to rebut the presumption that Penta Fund and Level Four Holdings were acting in the best interest of Level Four Inc. *See id.* at *21–24. Plaintiff does no more than make conclusory allegations of malice, which are insufficient to support a tortious interference with contract claim. *See Plasman*, 2016 NCBC LEXIS 80, at *42. Therefore, Defendants' Motion to Dismiss Plaintiff's claim for tortious interference

with contract against Defendants Penta Fund and Level Four Holdings should be GRANTED without prejudice.[8]

92. Ms. Irish, on the other hand, was appointed as the CEO of Level Four Inc. shortly following Plaintiff's termination. (Compl. ¶¶ 137–38.) Plaintiff makes factual allegations that he had satisfactorily performed his duties as Level Four Inc.'s CEO, Ms. Irish was directly involved in his termination, and Ms. Irish acted to benefit herself and used her authority to appoint herself as CEO of Level Four Inc. upon Plaintiff's termination. (Compl. ¶¶ 54–73, 114–25, 137, 201.) Drawing reasonable inferences in favor of Plaintiff, Plaintiff has made sufficient factual allegations for the purposes of Rule 12(b)(6) to show that Ms. Irish acted with malice in terminating Plaintiff's employment. *See Embree Constr. Grp., Inc.*, 330 N.C. at 499, 411 S.E.2d at 924 ("[T]hose who act for their own benefit may be held personally liable [for tortious interference with contract].") (emphasis omitted); *Lenzer*, 106 N.C. App. at 513, 418 S.E.2d at 286 ("[The p]laintiff's forecast of evidence raises precisely the issue of wrongful purpose, which purpose would defeat a non-outsider's qualified privilege to interfere"); *see also You v. Roe*, 97 N.C. App. 1, 9–10, 387 S.E.2d 188, 192 (1990) (providing that acting with the intent of gaining some advantage at the expense of a party may show legal malice).

93. Therefore, Defendants' Motion to Dismiss Plaintiff's claim for tortious interference with contract against Ms. Irish should be DENIED.

---

[8] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 29, 292 (2013).

94. As to Mr. Ellis, while it is not clear from the Complaint whether Mr. Ellis is a non-outsider, this is not determinative of the Court's disposition of the tortious interference claim asserted against him. (*See* Br. Supp. 15.) "General allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc.*, 184 N.C App. at 605, 646 S.E.2d at 833 (citing *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)); *see also Plasman*, 2016 NCBC LEXIS 80, at *42–43. Plaintiff does no more than make conclusory allegations of malice as it pertains to Mr. Ellis. Therefore, Defendant's Motion to Dismiss Plaintiff's claim for tortious interference with contract against Mr. Ellis should be GRANTED without prejudice.

### 2. Breach of Fiduciary Duty

95. Defendants Penta Fund and Level Four Holdings also contend that Plaintiff fails to sufficiently state a claim for breach of fiduciary duty against them. (Br. Supp. 19–30.)

96. To state a claim for breach of a fiduciary duty a plaintiff must allege (1) that the defendant owes the plaintiff a fiduciary duty through the existence of a fiduciary relationship, and (2) that the defendant breached that duty. *Surratt v. Brown*, 2015 NCBC LEXIS 75, at *19 (N.C. Super. Ct. July 27, 2015). "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013).

97. Plaintiff alleges that he, along with Level Four Holdings and Penta Fund, are shareholders of Level Four Inc. (Compl. ¶¶ 3–4, 97.) As previously stated, Level

Four Holdings is the majority shareholder of Level Four Inc. and Penta Fund is a minority shareholder. (Compl. ¶¶ 3–4.) Notwithstanding Penta Fund's minority shareholder status, Plaintiff alleges that Penta Fund is a controlling shareholder of Level Four Inc. (Compl. ¶ 213.) Plaintiff asserts a breach of fiduciary duty claim against Penta Fund and Level Four Holdings contending that they, as the controlling and majority shareholders of Level Four Inc., owe a fiduciary duty to Plaintiff in his capacity as a minority shareholder. (Compl. ¶¶ 212–13.) Plaintiff contends that Penta Fund and Level Four Holdings breached their fiduciary duty owed to him by causing the interest rate provision in his Employment Agreement to be breached, diminishing Plaintiff's equity interest in Level Four Inc., and diminishing other contractual rights owed to Plaintiff pursuant to his Employment Agreement and the Level Four Holdings Agreements. (Compl. ¶¶ 219–21.)

98.    Generally, "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997). However, there are two exceptions that may permit a shareholder to sue for injuries to the corporation: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." *Id.*

99.    "An injury is peculiar or personal to the shareholder if a legal basis exists to support [the] plaintiff's allegations of an individual loss, separate and distinct from

any damage suffered by the corporation." *Id.* at 659, 488 S.E.2d at 220 (internal quotation marks omitted). As a part of the basis for Plaintiff's claim for breach of fiduciary duty, Plaintiff alleges that he suffered injuries stemming from his loss of employment at Level Four Inc. (Compl. ¶ 219.) Plaintiff also alleges that his contractual rights that arose from his employment with Level Four Inc. were impaired. (Compl. ¶ 221.) These injuries are clearly distinct from the injuries sustained by Level Four Inc., meeting the second *Barger* exception.

100. Furthermore, the Court concludes for the reasons stated herein that Plaintiff has met the first *Barger* exception by sufficiently alleging the existence of fiduciary duties owed by Penta Fund and Level Four Holdings to Plaintiff. *See Corwin,* 371 N.C. at 612, 821 S.E.2d at 734 (providing that whether the first *Barger* exception applied depended on whether the plaintiff sufficiently alleged that the controlling stockholder owed the plaintiff fiduciary duties). Therefore, to the extent that Plaintiff's injuries are based on harm shared by Level Four Inc., Plaintiff may bring a direct suit against Level Four Holdings.[9]

101. "As a general rule, shareholders do not owe a fiduciary duty to each other or to the corporation." *Freese v. Smith,* 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993). "However, this rule is not without exception." *Id.*"

102. "It has long been the rule that majority shareholders, by virtue of their majority status, hold control over the corporation and therefore owe a duty to protect

---

[9] To the extent Plaintiff intends to assert his own rights, not for wrongs done to Level Four Inc., *Barger* does not apply. *Panzino v. 5Church, Inc.,* 2020 NCBC LEXIS 17, at *17 (N.C. Super. Ct. Feb. 12, 2020).

the interests of minority shareholders, who can act and contract in relation to the corporate property only through the former." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *18 (N.C. Super. Ct. June 19, 2019) (citing *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951)); *see also Corwin*, 371 N.C. at 616, 821 S.E.2d at 737. Therefore, as a majority shareholder of Level Four Inc., Level Four Holdings owes duties to Plaintiff as a minority shareholder. At this stage in the proceeding, Plaintiff has made sufficient factual allegations for a breach of fiduciary duty claim against Level Four Holdings and its Motion to Dismiss should be DENIED.

103. As it pertains to fiduciary duties owed from a controlling shareholder to another shareholder, "[i]t is well established that a controlling shareholder owes a fiduciary duty to [protect the interests of] minority shareholders." *Freese*, 110 N.C. App. at 37, 428 S.E.2d at 847. In *Corwin*, the North Carolina Supreme Court stated that it "has never held that a minority stockholder owes fiduciary duties to other stockholders, but it has also never held that a minority stockholder *cannot* owe fiduciary duties to other stockholders." *Id.* at 616, 821 S.E.2d at 737 (emphasis in original). In reliance on Delaware law, the North Carolina Supreme Court left the possibility open to claimants that a minority, but controlling shareholder, could owe a fiduciary duty to other minority shareholders if the controlling shareholder "exercises control over the business and affairs of the corporation." *Id.* (quoting *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994)).

104. Pursuant to Delaware corporate law principles, in order for a claim of breach of fiduciary duty by a minority shareholder to survive a motion to dismiss, "the complaint must contain well-pled facts showing that the minority shareholder exercised actual domination and control over . . . the [corporation's] directors." *Corwin*, 371 N.C. at 617, 821 S.E.2d at 738 (citing *In re Morton's Rest. Grp., Inc.*, 74 A.3d 656, 665 (Del. Ch. 2013) (internal quotation marks, emphasis, and brackets omitted).

105. Delaware law and the North Carolina Supreme Court's analysis in *Corwin* is instructive here. *See McMillan v. Unique Places, LLC*, 2015 NCBC LEXIS 49, at *8 (N.C. Super. Ct. May 7, 2015) (providing this Court "frequently finds [the Delaware Chancery Court] to be persuasive authority on various issues of business and corporate law"). Penta Fund's status as a minority shareholder does not on its own preclude Plaintiff from bringing a claim for breach of fiduciary duty against Penta Fund. *See Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 635, 794 S.E.2d 346, 351 (2016) ("In North Carolina, a fiduciary duty can arise by operation of law (*de jure*) or based on the facts and circumstances (*de facto*) [.]")

106. Plaintiff alleges that Penta Fund used its control over Level Four Holdings and Ms. Irish to exercise complete control over Level Four Inc. (Compl. ¶ 217.) Level Four Holdings owns a majority interest in Level Four Inc. (Compl. ¶ 3.) Plaintiff also alleges that in addition to being a minority interest holder in Level Four Inc., Penta Fund is the sole authorized representative of Level Four Holdings, making Penta

Fund able to exercise Level Four Holdings' majority control over Level Four Inc. (Compl. ¶¶ 4, 153.)

107. Ms. Irish, while simultaneously acting as a managing partner and investment committee member of Penta Fund, is the sole director of Level Four Inc. (Compl. ¶ 6.) Plaintiff alleges that Level Four. Inc's board of directors does not include "any independent directors that are not entirely controlled by Penta Fund." (Comp. ¶ 216.)

108. Penta Fund, represented by Ms. Irish, was involved in Plaintiff's hiring and termination and in increasing the interest rate on all debts owed by Level Four Inc. to Penta Fund. (*See* Compl. ¶¶ 13, 25, 98–113, 117–123.) Penta Fund was also intimately involved into the day-to-day operations of Level Four Inc., frequently interacting with Plaintiff during his tenure as Level Four Inc.'s CEO. (*See* Compl. ¶¶ 58–60, 152.)

109. Plaintiff alleges that Penta Fund used its control over Ms. Irish, as Level Four Inc.'s only director, to increase the interest rate on the debt owed by Level Four Inc. to Penta Fund, make preferential payments to Penta Fund, terminate Plaintiff's employment for cause and appoint Ms. Irish as the CEO of Level Four Inc. (Compl. ¶¶ 120, 138, 143, 154–57.) Plaintiff further alleges that Penta Fund worked with, or alternatively, used its control over, Level Four Holdings, the majority shareholder, to exercise control over Level Four Inc. (*See* Compl. ¶¶ 142, 146, 150, 155, 200, 207, 214–219)

110. Plaintiff makes several specific factual allegations showing that Penta Fund exercised actual control over Level Four Inc. by virtue of its control of Ms. Irish and its relationship with Level Four Holdings and used that control to make decisions for Level Four Inc. that harmed Plaintiff. *See In re Primedia Inc. Derivative Litig.*, 910 A.2d 248, 258 (Del. Ch. 2006) (determining the claimant alleged sufficient control to support a breach of a fiduciary duty claim by alleging that the defendant "dominated and dictated" important decisions, acted as an "influential force" behind the stock redemptions subject to the litigation, appointed its own associates to the board of directors, and there was no independent committee on the board); *see also Gao v. Sinova Specialties, Inc.*, 2016 NCBC LEXIS 104, at *16–23 (N.C. Super. Ct. Dec. 21, 2016) (declining to dismiss at the Rule 12(b)(6) stage the plaintiff's direct breach of fiduciary duty claim against two minority shareholders working together as the majority for their alleged misconduct).

111. For the purposes of Rule 12(b)(6), Plaintiff makes sufficient factual allegations of control to support a breach of fiduciary duty claim against Penta Fund. *See Oakeson v. TBM Consulting Grp., Inc.*, 2009 NCBC LEXIS 34, at *19 (N.C. Super. Ct. Aug. 21, 2009) (permitting a breach of a fiduciary duty claim against a controlling shareholder to go forward when the court could not conclude that no set of facts in the complaint could support the breach of fiduciary duty claim). Therefore, Defendants' Motion to Dismiss Plaintiff's breach of fiduciary duty claim should be DENIED.

### 3.    Civil Conspiracy

112.    Defendants also contend that Plaintiff's civil conspiracy claim should be dismissed pursuant to Rule 12(b)(6).  (Br. Supp. ¶¶ 16–18.)

113.    "It is well established that there is not a separate civil action for civil conspiracy in North Carolina." *Plasman*, 2016 NCBC LEXIS 80, at *33.  A civil conspiracy claim "is simply a mechanism for associating the defendants and broadening the admissible evidence." *Id.*  "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *Sellers v. Morton*, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008) (citation and quotation marks omitted).

114.    To plead civil conspiracy, a claimant must allege "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Elliot v. Elliot*, 200 N.C. App. 259, 264, 683 S.E.2d 405, 409 (2009).  "A claim for civil conspiracy requires only that the overt act be committed by *one or more of the conspirators* pursuant to the scheme and in furtherance of the objective." *Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at *40 (N.C. Super. Ct. Aug. 20, 2019) (quoting *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966)) (emphasis in original) (brackets and quotation marks omitted).

115.     Plaintiff alleged that Defendants agreed to unlawfully terminate Plaintiff's employment from Level Four Inc. for cause and increase the interest rate on the debt owed by Level Four Inc. to Penta Fund contrary to the terms of the Employment Agreement pursuant to a common scheme, which caused harm to Plaintiff.   (Compl. ¶¶ 137–163, 207–10.)  Plaintiff further identifies and alleges specific overt acts taken by the Defendants in pursuit of the common scheme.   (*See* Compl. ¶¶ 137–163.) Plaintiff's factual allegations sufficiently support Plaintiff's claim for civil conspiracy. *See Chisum v. MacDonald*, 2018 NCBC LEXIS 34, at *31–32 (N.C. Super. Ct. Apr. 18, 2018) (concluding that allegations that the defendant knew and agreed to a scheme to eliminate the plaintiff's LLC membership interest and that the defendant took unlawful actions in furtherance of the scheme was sufficient for the civil conspiracy claim to survive a motion to dismiss pursuant to Rule 12(b)(6)).

116.     Defendants contend that, because Plaintiff's claim for tortious interference with contract and breach of fiduciary duty fails, so does Plaintiff's claim for civil conspiracy. (Br. Supp. 16–18.)  Notwithstanding Defendants' position, the Court has already concluded that both Plaintiff's tortious interference with contract claim and breach of fiduciary duty claim survive the Motion, at least in part.  *Brewster*, 2018 NCBC LEXIS 76, at *15 (declining to dismiss a civil conspiracy claim brought against a corporation and some of its shareholders when the plaintiff adequately plead a breach of fiduciary duty claim); *Sandhills Home Care, L.L.C. v. Companion Home Care-Unimed, Inc.*, 2016 NCBC LEXIS 61, at *58 (N.C. Super. Ct. Aug. 1, 2016)

("Since the Court has not dismissed some of Plaintiff's claims that could form the basis for a civil conspiracy, it cannot dismiss the claim for conspiracy.").

117. For the foregoing reasons, the Court concludes that Defendants' Motion to Dismiss Plaintiff's claim for civil conspiracy should be **DENIED**.

## V. CONCLUSION

118. As a result of the Court's analysis and foregoing conclusions, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

    a.    Plaintiff's claim for declaratory judgment against Level Four Holdings is **DISMISSED** without prejudice for lack of subject matter jurisdiction;

    b.    Defendants' Motion to Dismiss for lack of personal jurisdiction over Level Four Holdings is **DENIED**;

    c.    Defendants' Motion to Dismiss for lack of personal jurisdiction over Mr. Ellis is **DENIED**;

    d.    Defendants' Motion is **GRANTED** as to Plaintiff's tortious interference with contract claim brought against Penta Fund, Level Four Holdings, and Mr. Ellis and the claim is **DISMISSED** without prejudice. Defendant's Motion is **DENIED** as to Plaintiff's tortious interference with contract claim brought against Ms. Irish.

    e.    Defendants' Motion is **DENIED** as to Plaintiff's claim for breach of fiduciary duty;

f.      Defendants' Motion is **DENIED** as to Plaintiff's claim for civil

conspiracy.

SO ORDERED, this the 13th day of March, 2020.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases